[S. F. No. 7678, Department One.—February 23, 1918.]

MARTHA E. HALLIDIE, as Trustee, etc., Appellant, **v.** FIRST FEDERAL TRUST COMPANY (a Corporation), as Administrator, etc., Respondent.

SALE OF CORPORATION STOCK—FRAUD IN PROCURING SALE—ACTION FOR DIVIDENDS AND PROFITS—FINDINGS ON CONFLICTING EVIDENCE—APPEAL.—Findings made upon conflicting evidence are conclusive on an appellate court which must view all inferences which the trial court might reasonably have drawn as evidence tending to support a finding assailed.

ID.—RELIANCE ON REPRESENTATIONS.—Reliance upon representations alleged to have been false and fraudulent is a necessary element in an action based on fraud and deceit.

ID.—SUFFICIENCY OF EVIDENCE.—Evidence examined, in an action for an accounting of profits on a sale of shares of stock, alleged to have been procured by fraudulent representations of the purchaser, and found to justify the conclusion of the trial court that the president of the corporation selling the stock, who acted for that corporation in the negotiations, relied upon his own judgment, experience, and information, in acting upon the offer made by the purchaser.

ID.—FIDUCIARY CAPACITY—DUTY TO DISCLOSE FACTS.—Where the purchaser in such case was a director and also general manager of the corporation selling the stock, but the latter was represented in the transaction by a director who was also its president, the two stood on equal terms in the negotiations, and neither owed the other any special duty of a fiduciary capacity.

ID.—INADEQUACY OF CONSIDERATION.—In such case, in view of the relation between the parties, if the stock at the time of the purchase was worth much more than the price paid, that fact would not furnish a ground for setting the transaction aside.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Osgood Putnam, Wm. C. Crittenden, and Chas. C. Boynton, for Appellant.

Cushing & Cushing, William H. Gorrill, and Wm. S. McKnight, for Respondent.

SLOSS, J.—For many years California Wire Works, a corporation, had been engaged in the manufacture of various wire products, including wire netting. The company had been founded by A. S. Hallidie, who was its manager and principal stockholder. Victor Enginger, who had been in its employ, engaged in the manufacture of wire cloth and netting on his own account. In 1895 Hallidie and Enginger organized California Wire Cloth Company, a corporation which was formed to take over the wire cloth and netting business of the Wire Works and that of Enginger. Enginger took a majority of the stock of the new corporation, and became its treasurer and general manager. Certain machinery of the Wire Works was sold to the Wire Cloth Company for an agreed price, paid in part by the issuance to California Wire Works of fifty shares of the capital stock of the California Wire Cloth Company, regarded by the parties as paid up to the extent of $50 per share.

In January, 1899, Enginger bought these fifty shares for $1,625, or $32.50 per share. The present action was brought to compel an accounting of dividends and other proceeds realized by the purchaser, on the ground that the sale had been induced by fraudulent misrepresentations made by Enginger to Hallidie, who was acting in the transaction for California Wire Works. The plaintiff, who is the widow of A. S. Hallidie, maintains the action as trustee for the stockholders of California Wire Works, which has forfeited its charter. Judgment went in favor of the defendant, Enginger, and the plaintiff appeals. Pending the appeal Enginger died, and the First Federal Trust Company, the administrator of his estate, has been substituted as defendant and respondent.

The findings of the court were against the averments of fraud contained in the complaint. There is a further finding that neither Hallidie nor the California Wire Works acted or relied upon any false statement or representations alleged to have been made by Enginger. The only substantial ground urged by the plaintiff in support of her appeal is that the evidence does not support these findings.

The complaint set up two classes of fraudulent misrepresentations, which, as was claimed, had operated to induce

Hallidie to sell the stock of the Wire Works to Enginger at $32.50 a share. It was alleged, in considerable detail, that during the several years preceding the sale Enginger had made false entries in the inventories and accounts of said California Wire Cloth Company, and had thereby deceived Hallidie into the belief that the assets and profits of said corporation were smaller than they in fact were. We may dismiss this branch of the case with the statement that the court found that there had been no falsification of the corporate records, and that a reading of the transcript satisfies us that the appellant concedes little enough when she admits that this finding is sustained by the evidence. The learned judge of the trial court had strong warrant for saying, as he did, that ''the evidence is conclusive that the defendant [Enginger] did not make those alterations.''

The other alleged misrepresentations were oral, relating, principally, to the profits earned by the California Wire Cloth Company for the two or three years preceding the purchase of the fifty shares by Enginger. In substance, the allegation of the complaint is that the corporation had made large profits during the years from 1895 to 1899; that Enginger repeatedly stated to Hallidie that the company was not making any profits; that these representations were made by him for the purpose of misleading Hallidie and inducing him, as manager of the California Wire Works, to sell said fifty shares of stock to defendant for a price far below their actual value, which is alleged to have been, at the time of the sale, in excess of $185 per share. As we have said, the court found that no false representations were made. The appellant's claim that this finding is contrary to the uncontradicted evidence is based upon a distorted and partial view of a few isolated extracts from the testimony of Enginger. Findings made upon conflicting evidence are conclusive here, and an appellate court must view all inferences which the trial court might reasonably have drawn as evidence tending to support a finding assailed. (*Ryder* v. *Bamberger,* 172 Cal. 791, [158 Pac. 753].) The record, read in the light of this rule, is entirely consistent with the conclusion that whatever representations Enginger may have made to Hallidie were substantially true. Much is sought to be made of the fact that the California Wire Cloth Company derived large

profits from the sale of netting for use in fish nets, a branch of business that began to develop shortly before the sale of the shares of stock here in question. Without going into this matter at length, we deem it sufficient to say that the evidence fully justified the conclusion that Enginger said and did nothing tending to mislead Hallidie in this, or in any other matter affecting the value of the stock.

But, regardless of these considerations, the appellant is still confronted by the finding that Hallidie did not rely upon Enginger's statements. Such reliance is, of course, a necessary element in an action based on fraud or deceit. (*Maxon-Nowlin Co.* v. *Norswing*, 166 Cal. 509, [137 Pac. 240].) The finding is amply sustained by the evidence. Hallidie was a man of long experience in the manufacture and sale of the very class of articles made and sold by the California Wire Cloth Company. The California Wire Works, of which he was manager, had for many years been engaged in the manufacture of wire netting. As stated above, the Wire Cloth Company was organized for the purpose, among other things, of taking over the wire-netting business and machinery of the California Wire Works. Hallidie became a director and the president of the California Wire Cloth Company, and continued in these capacities until the sale of the fifty shares. It was his practice to attend the meetings of the board of directors, which were held monthly. While his health was somewhat impaired, there is no suggestion that he was suffering from any mental weakness or derangement, or that he was incapacitated from attending to business. At the meetings of the California Wire Cloth Company, statements of the accounts and transactions of the company were presented by Enginger and read to the directors. The general conditions of the business were discussed. The evidence indicates that, throughout the first years of the business career of the Wire Cloth Company, Hallidie was anything but optimistic with regard to the company's ability to realize substantial profits from the manufacture of wire netting. In August or September, 1898, Enginger made an offer of $32.50 per share for the stock owned by California Wire Works. Hallidie did not act on the offer for three or four months. Finally, in January, 1899, he advised Enginger that the board of directors of the

Wire Works had decided to sell the stock at the figure offered. Just prior to this, public announcement had been made of a consolidation of the manufacturers of wire, to whom the Wire Cloth Company had to look for its supplies of wire to be used in the making of its netting and cloth. The record justifies the inference that Hallidie feared that the manufacture and sale of wire netting would be rendered more difficult and hazardous by the amalgamation, and that this apprehension was, in large part at least, the moving cause of his decision to sell. At any rate, the trial court was warranted in concluding that Hallidie relied upon his own judgment, experience, and information in acting upon the offer made by Enginger. That he had not the same faith in the future of the business that Enginger had is apparent. That the subsequent progress of the corporation vindicated Enginger's judgment is equally plain. But the fact that the purchase proved very profitable to Enginger would not justify a court in setting it aside.

It is suggested in the appellant's brief that, even if there was no active misrepresentation by Enginger, there was a failure upon his part to disclose all of the facts within his knowledge. But the evidence did not show any such relation between the parties as to impose upon Enginger the stringent obligations of a trustee. While Enginger was a director and general manager of the Wire Cloth Company, it must be remembered that Hallidie himself was not only a director, but the president of the corporation. In negotiating for the stock, the two stood on equal terms, and neither owed the other any special duty of a fiduciary nature.

This being the relation between the parties, the fact, if it be a fact, that the stock was, at the time of the purchase, worth very much more than the price paid, does not furnish a ground for setting the transaction aside. "Where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price . . . unaccompanied by other inequitable incidents, is never of itself a sufficient ground for canceling an executed or executory contract." (Pomeroy's Equity Jurisprudence, 3d ed., sec. 926.)

We see no reason to question the correctness of the conclusions reached below.

The judgment is affirmed.

Shaw, J., and Richards, J., *pro tem.,* concurred.

Hearing in Bank denied.