[Civ. No. 14349. First Dist., Div. One. Nov. 27, 1950.]

JULIA S. VICKERSON, Appellant, v. MELVIN M. FREY et al., Respondents.

Morse & Richards for Appellant.

Breed, Robinson & Stewart for Respondents.

WOOD (Fred B.), J.—Plaintiff appeals from the judgment rendered in an action in which she sought to rescind a contract for the purchase of certain real property from defendants and defendants sought damages from plaintiff for her asserted failure to perform that contract.

Prior to the trial, the parties stipulated that the sum of $3,740, then on deposit with the court, (a) be paid to plaintiff and credited against the judgment, if the judgment determine that plaintiff was entitled to rescind, or (b) be retained by defendants in full satisfaction of the judgment, in lieu of any damages claimed by them for plaintiff's failure to purchase, if the judgment determine that plaintiff was not entitled to rescind.

The issues framed by the pleadings embraced alleged fraud of respondents in obtaining appellant's consent to the contract by means of alleged misrepresentation by respondents' agents concerning the property. The asserted misrepresentation was that a part of the basement could readily be converted into a dwelling unit and produce a substantial revenue. The case appears to have been tried as if the pleadings also presented issues of mistakes of fact and of law. Appellant claims that the question of failure of consideration was also in issue. The trial court found against her on the issues of fraud and mistake, and, as to failure of consideration, refrained from determining the value of the property "for the

reason that such determination is unnecessary to a decision in this case under the pleadings and stipulation.''

Appellant assigns as error: (1) there was in fact fraud as alleged, (2) if no fraud, there was such a material mistake of fact, or combined mistake of fact and law, as entitled appellant to rescind, and (3) if no fraud or mistake, there was a partial failure of consideration.

It appears that respondents listed for sale, at $22,000, a building in Oakland that contained two apartments and a partly finished basement. The front apartment was rented. The rear apartment was occupied by respondents and Mrs. Frey, Sr., mother of respondent Melvin Frey. In the basement there were three finished rooms: a bedroom for use as a guest room, and two rooms designated a laboratory and rented to a photographer. The remainder of the basement had a cement floor but was otherwise unfinished.

A Mr. Albert Bequette, salesman for a real estate broker interested in effecting a sale, telephoned appellant regarding this property, went to her home, and discussed it with her. They then went to the property and were shown through all of it, except the rented apartment, by Mrs. Frey, Sr. They returned the next day and, accompanied by Mrs. Frey, Sr., again examined the property, including the rented apartment. Upon each of these occasions they spent about one and one-half hours upon the premises, appellant spending the greater part of the time considering how the unfinished portion of the basement could be converted into an apartment to be rented for living quarters.

Appellant testified that at the very first discussion of this property, at her home, Bequette told her that there were two apartments finished and that she could finish a third which could rent at $40 a month; that the front apartment rented for $50; that the apartment occupied by respondents had no rent ceiling; that the photographic studio rented for $50 and the basement bedroom could be rented for $30; that that would mean an income of $220 a month and, for the price of $22,000, Bequette considered it a good deal; that Mrs. Frey, Sr., showed her where they had finished the bedroom in the basement, and where, as Mrs. Frey said, the roughed-in plumbing was, and that appellant could finish up the apartment; that, believing that an apartment could readily be finished in the basement, she signed the contract of purchase, but later discovered it could not be done because building regulations (Health & Saf. Code, § 16057) required a clearance

of 8 feet between finished floor and finished ceiling and this unfinished basement had a clearance of but 7 feet 6 inches; that she would not have signed the contract had she known that the unfinished portion of the basement could not readily be converted into a dwelling apartment.

At none of these conversations was the height of the basement mentioned. Until appellant's discovery after the signing of the contract, neither she nor Bequette nor Mrs. Frey, Sr., knew or considered the basement height; nor was any of them aware that the applicable building regulations required (assuming that they did require) a height of 8 feet.

Bequette denied that he told appellant the basement could be made into a living apartment or used as such. He testified that the subject of converting the basement was not introduced by him; that there was no discussion of it at appellant's home; that the subject first arose after they were on the property and down in the basement, when appellant suggested she would convert that downstairs into another apartment; she suggested she would put in an apartment down there if she went through with the deal; he did not advise her it could or could not be used for living quarters, did not make any representation about it at all; that he merely agreed with her suggested alterations on the basement, told her he thought they were good; at that time he had no idea whether or not a place for living quarters could be built with less than 8 feet clearance from floor to ceiling; that he had seen many around town that were finished with the same dimensions as this basement, or less; that he told appellant the front apartment rented for $50 a month, the back apartment had a rental value of $50, the photo studio rented at $50, may have told her the basement bedroom could be rented for $30, did not tell her there was an apartment that could be rented at $40; that he did not figure the price of $22,000 based on a rental of $220 a month; that he got the price from the seller, did not consult with the seller in the fixing of the price.

Mrs. Frey, Sr., testified that she showed appellant the Frey apartment first and then they went down to the basement; while in the Frey apartment there was no discussion of the basement; while they were in the basement, appellant said she would like to make an apartment of it, that if she bought the property she was going to put in a basement apartment; Mrs. Frey thought it a good idea, not knowing anything about height or anything; on the second visit appellant continued with the idea that she wanted to convert the basement into

an apartment; that Mrs. Frey thought it a good idea; that there was no discussion about the rental value of the proposed basement apartment nor of the total rental value of the entire property; and that appellant told Mrs. Frey that appellant knew property and that immediately upon seeing it she knew the value of the property and had bought many pieces of property and knew the value of property.

It appears that appellant had considerable experience in buying and selling property. During recent years she had purchased about five properties, including one apartment house of 13 units which she bought at $50,000 and later sold at $63,000, one of four units, and another of six units.

As to plumbing in the basement, Bequette recalled no discussion about its being in for an apartment. He testified that it was obvious, there were sewer pipes on the far wall, plumbing for the upper apartment, not outlets ready to be hooked up, nor was there any plumbing or hookup for plumbing for a proposed kitchen. Mrs. .Frey, Sr., testified that appellant asked her about the plumbing and she said, ''Well, there is the sewerage,'' and that at one time her son was going to have a shower put in there for the convenience of the little extra room and he said the plumber said it could be done; that the plumbing was visible, the large part that came down through the ceiling and some smaller water pipes around; that she did not tell appellant that the plumbing was all in to convert this into a basement apartment by merely making the connections. We find in the record no evidence concerning the feasibility, or not, of installing plumbing for a living apartment in the basement, and appellant appears, upon this appeal, to have abandoned any alleged representations concerning the plumbing as a basis for her rescission of the contract.

There seems ample support in this evidence for the trial court's findings that appellant's consent to purchase was not obtained by fraud of respondents or their agents; that she did not execute the agreement relying upon any representations made by respondents or their agents; that she fully and thoroughly examined the basement prior to entering into the agreement; and that in making the purchase she relied upon her own examination of the premises.　Findings made upon conflicting evidence are conclusive here, and an appellate court must view all inferences which the trial court might reasonably have drawn as evidence tending to support a finding assailed. (*Hallidie* v. *First Federal Trust Co.,* 177 Cal. 600, 602 [171 P. 431].)　Also, where one undertakes to

investigate the property involved and proceeds with the investigation without hindrance, it will be considered that he went far enough with it to be satisfied with what he learned. He should be charged with all the knowledge he might have obtained had he pursued the inquiry to the end, when not thwarted or misled in his investigation by the fraud or deceit of the party against whom he asserts the right of rescission. (*Carpenter* v. *Hamilton,* 18 Cal.App.2d 69, 71 [62 P.2d 1397] ; *Gifford* v. *Roberts,* 81 Cal.App.2d 712, 718 [184 P.2d 942].)

There is some suggestion by appellant that, because she had handled the purchase and sale of a number of properties through Mr. Bequette and his firm, he was familiar with her affairs and knew of her need for income property; hence, that he owed her a higher duty of disclosure than otherwise might be and that she, reasonably, was the more inclined to rely upon his representations even though in this transaction he was the agent of respondents. That suggestion is predicated upon Bequette's having represented to appellant that the basement readily could be converted into a living apartment, knowing or having reason to know it could not be done, and upon her having relied upon such representation, none of which was proven.

 Concerning mistake, as a ground for rescission, the trial court found that the agreement of sale was not obtained or induced by either mistake of law or mistake of fact. The evidence supports that finding.

Appellant when proposing and deciding that she would convert the basement into a living apartment, and Bequette and Mrs. Frey when concurring in that idea, assumed it could legally be done without lowering the basement floor. That was a mistake of fact (''An unconscious ignorance'' of the basement ceiling height), as defined in section 1577 of the Civil Code, and a mistake of law (''misapprehension of the law by all parties, all supposing that they knew and understood it,'' a law which required a clearance of 8 feet from finished floor to finished ceiling), as defined in section 1578 of the Civil Code.

 But was this combined mistake of fact and law ''material to the contract'' as required, for rescission of a contract, expressly by section 1577 and impliedly by section 1578? We think not.

This mistake bore upon the use of but a portion of the property under purchase, a contemplated use which, despite the mistake, was not impossible. As correctly found by the

trial court, "it is possible to construct living quarters in the basement . . . so as to provide the ceiling height required by law, provided the floor level in said basement is lowered." The contemplated conversion would merely be more difficult and costly than contemplated by appellant, and there is no evidence that the added cost would be prohibitive; indeed, no evidence concerning the contemplated or the increased cost of conversion, the sole testimony in that connection being that lowering of the basement floor would be a "major operation."

This mistake did not relate to the intrinsic nature of the bargain, did not vitally affect a fact on the basis of which the parties contracted. Appellant, despite the mistake, would acquire the very lot and building she examined and bargained for. It is not like a case where it develops that the seller had no title or that the thing bargained for had no existence, or other mistake concerning an essential matter.

[6] It is a mistake pertaining to a collateral matter, a quality or characteristic of the thing sold,—the feasibility of converting the basement into living quarters. In such a case, the difference between the real and the supposed quality or nature of the thing must be so great, so extreme, as to make it virtually a different thing. Such was the nature of the mistake in *Hannah* v. *Steinman*, 159 Cal. 142 [112 P. 1094], upon which appellant chiefly relies. Plaintiff in the Hannah case had leased an unimproved city lot for a term of three years, with right of renewal for two years. The lease recited that the tenant contemplated erecting buildings, which would be his at the end of the lease. Two days before execution of the lease, a municipal ordinance was adopted which forbade the erection of wooden buildings in the area where this lot was situated. Neither party knew of this change in the law. Without the right to erect wooden buildings, the lease was without value to the tenant. It was impossible to use the lot to advantage without a building and the cost of such a building as could be constructed, in view of the ordinance, would be so great as to render a lease of so short a term valueless. This compelled the conclusion that the parties contemplated that the lessee could use the lot to advantage only by constructing wooden buildings, and that he was taking it for such use. Said the court, "While there was no mistake as to the identity of the land itself, without that right" (to erect wooden buildings) "and viewed with reference to a lease for only five years the land was a substantially different thing from the land supposed to be contracted for" (159 Cal. at

p. 149), and without that right "the tenant, so far as all practical considerations are concerned, was obtaining nothing" (159 Cal. at p. 150).

Similarly, in *Mineral Park Land Co.* v. *Howard,* 172 Cal. 289 [156 P. 458, L.R.A. 1916F 1], which involved a contract by the defendants to take from plaintiff's land all of the gravel and earth needed for certain construction work. Defendants removed 50,131 cubic yards, taking the balance, 50,869 cubic yards, from another source. It appeared that plaintiff's land contained enough material to satisfy the balance under contract but that it was below the water level and the cost of extracting it would be 10 or 12 times as much as the usual cost, and it would require drying at great expense and delay. In holding that these facts excused defendants' failure to extract the material that was below water level, the court said: "The parties were contracting for the right to take earth and gravel to be used in the construction of the bridge. When they stipulated that all of the earth and gravel needed for this purpose should be taken from plaintiff's land, they contemplated and assumed that the land contained the requisite quantity, available for use. The defendants were not binding themselves to take what was not there. And, in determining whether the earth and gravel were 'available,' we must view the conditions in a practical and reasonable way. Although there was gravel on the land, it was so situated that the defendants could not take it by ordinary means, nor except at a prohibitive cost. To all fair intents then, it was impossible for defendants to take it. 'A thing is impossible in legal contemplation when it is not practicable; and a thing is impracticable when it can only be done at an excessive and unreasonable cost.' (1 Beach on Contracts, sec. 216.) We do not mean to intimate that the defendants could excuse themselves by showing the existence of conditions which would make the performance of their obligation more expensive than they had anticipated, or which would entail a loss upon them. But where the difference in cost is so great as here, and has the effect, as found, of making performance impracticable, the situation is not different from that of a total absence of earth and gravel." (P. 293.)

The instant case is neither of those cases. It is merely a case in which the planned alteration of a portion of a building proves more difficult and more expensive than contemplated. How much more expensive, there is no evidence; no evidence that the proposed alteration is "impracticable" within the

meaning of that term as used in *Mineral Park Land Co.* v. *Howard, supra,* 172 Cal. 289, 293.

█ Failure of consideration, as a ground for rescission, is predicated by appellant upon the asserted impossibility of lawfully adding a third apartment to the real property which she contracted to buy. There was no such impossibility, as we have seen in discussing the issue of mistake of fact and of law.

In support of her position, appellant invokes subdivisions 2 and 4 of section 1689 of the Civil Code. Subdivision 2 allows rescission if the consideration fails in whole or in part "through the fault of the party as to whom" one rescinds. That there was no such fault is demonstrated by the facts which support the trial court's finding against appellant on the subject of fraud. █ Subdivision 4 authorizes a contracting party to rescind if the consideration fails "in a material respect," for any cause, before it is rendered to him. That there was no such failure seems clear from the facts which support the finding that there was no mistake of fact or of law, no mistake material to the contract. Appellant did adduce testimony that the property under contract of purchase was worth $16,000 or $17,000 with two apartments and would be worth $22,000 with three. However, appellant knew it had but two; planned to convert it into three; made her own investigation prior to signing; later discovered she had underestimated the extent of the alterations involved; and gave no evidence as to the differential in costs, nothing to indicate a failure of consideration in a "material" respect.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.