[Civ. No. 22121.   First Dist., Div. Two.   Aug. 16, 1965.]

ALICE WILLIAMS, Plaintiff and Respondent, v. CECILIA
PUCCINELLI, Defendant and Appellant.

Severson, Zang, Werson, Berke & Larson, Severson, Werson, Berke & Larson and Edmund T. King II for Defendant and Appellant.

Shapro, Anixter & Aronson and Henry Cohen for Plaintiff and Respondent.

AGEE, J.—Defendant-owner appeals from a judgment rescinding the lease to plaintiff of a portion of a two-story building located on the northeast corner of Montgomery Street and Pacific Avenue, San Francisco. The term of the lease was for ten years, commencing December 1, 1960.

The leased portion of the building included the entire second floor and two spaces on the first floor. The remaining three first floor spaces were occupied by the Barbary Restaurant and two other businesses.

The parties mutually contemplated that respondent would install and operate a restaurant and bar on the second floor and the lease expressly provided for such purpose. The second floor had not been occupied for 14 years and was last used as a rooming house.

Unknown to both parties, substantial alterations in the building, including portions not leased by respondent, were required by law in order to allow the second floor to be used for a restaurant and bar. The principal defect was that the second floor would not support the weight or "live load"[1] requirements of the Building Code of the City and County of San Francisco as to restaurants. The law also required that a fire resistant material or partition be installed on the ceiling of the first floor, except that portion occupied by the Barbary Restaurant, where such work had already been done.

The structural weaknesses in the building itself, that is, in the exterior walls, roof and in the columns and beams supporting the second floor, were not discovered by respondent until after the lease had been signed and plans and specifications were being prepared for the construction and installation of the restaurant and bar.

When advised on January 27, 1961 of the work necessary to be done in order to comply with the law, respondent im-

---

[1] I.e., people, restaurant and bar equipment, and supplies.

mediately notified appellant and requested that the necessary steps be taken to put the premises in such condition. Appellant refused to do anything, taking the position that the responsibility for any alterations or improvements was solely that of the respondent.

On February 10, 1961 respondent sent to appellant a further request that the necessary structural corrections be made to the building ''outside of the space'' leased to respondent.

This request reads as follows: ''My plans and specifications are nearly complete for commencing work in the space leased in your building at the northeast corner of Montgomery Street and Pacific Avenue.

''Before I can start, however, the building structure must be repaired to conform to the San Francisco Building Code and fire and safety regulations.

''According to our lease it is your responsibility as lessor to make repairs to the outside building walls and roof, as well as to correct structural defects *outside of the space leased by me.* These defects were partially outlined in the report submitted to you on January 27, 1961.

''Please advise me by mail, at your earliest convenience, as to whether or not you intend to comply with all of the City and State Codes and Ordinances to make the structure *surrounding* the space leased to me suitable for my occupancy.'' (Italics added.)

Again, appellant refused to do anything. On March 7, 1961 respondent's attorneys gave appellant written notice of rescission and demanded that appellant return the money which respondent had paid under the lease.

On March 20, 1961 appellant's attorneys replied that ''the rescission set forth in your letter of March 7, 1961 is rejected. Your attention is invited to Paragraph 22nd of the lease under which the lessee leased the premises 'as is.' It is the position of the lessor that she is under no duty, liability or obligation to perform any work which may be required to fit the demised premises for use as a restaurant. . . .'' Appellant also relies upon paragraph Sixth of the lease. The pertinent parts of these two paragraphs follow.

''SIXTH: That the lessee will, at his sole cost and expense, comply with all of the requirements of all Municipal, State and Federal authorities now in force, or which may hereafter be in force, *pertaining to the said premises,* oc-

casioned by or affecting the use to which *said premises* have been, are being, or are to be put *by the lessee,* and will faithfully observe in the use of the premises all Municipal ordinances and State and Federal statutes now in force or which may hereafter be in force.'' (Italics ours.)

''TWENTY-SECOND: The parties agree that the lessee leases the premises in an 'as is' condition and the lessee may at its own expense, make exterior and interior alterations, repairs and improvements *to the demised premises,* including windows and doors and including but not limited to the installation of trade fixtures, ceilings, lighting fixtures, removable partitions and interior decorations.'' (Italics ours.)

It is clear that both paragraphs apply only to the *demised* premises, which are described in the lease as follows: ''All of the space on the entire second floor, known and designated as 910 Montgomery Street; all of the space in the corner store, known and designated as 498 Pacific Avenue; and all of the space in the store next to the corner, known and designated as 496 Pacific Avenue; same being *part* of that certain two story brick building situate on the northeast corner of Pacific Avenue and Montgomery Street.'' (Italics ours.)

It is equally clear that the essence of the trial court's holding herein is that, unknown to the parties at the time of entering into the lease, a restaurant and bar could not be lawfully constructed and installed upon the demised premises without substantial structural improvements and repairs to that part of the premises *not* demised and which was *not* within the control of respondent under the lease.

The trial court expressly found that ''there was a material, mutual mistake of fact in that the parties to said lease believed said demised premises, on the second floor of said building, could be used as a restaurant and bar without any structural changes in the brick building; and that it was not within the contemplation of the parties at the time the lease was executed, [that] the very costly structure changes *to the building itself* would have to be made before said second floor could be used lawfully as a restaurant.'' (Italics ours.)

The foregoing finding is based upon substantial evidence and supports the trial court's conclusion that there was a mutual mistake as to a basic fact which induced respondent to enter into the lease. (Civ. Code § 1577; Rest., Contracts § 502; 1 Witkin, Summary of Cal. Law (1960) ''Mutual Mistake as to Basic Fact,'' § 127, p. 135.) As stated by Witkin,

*supra,* at page 135: ''If there is mutual assent as to the subject matter and parties to the agreement, a contract results; but it may be *voidable* and subject to *rescission* where there is a harmful mistake as to some basic or material fact which induced the plaintiff to enter into it. [Citations.]
. . . It must affect in some material way one of the essential elements of the contract, . . . so that it clearly appears that the complaining party would not have entered into it except for his mistaken belief.''

The testimony is without conflict that both parties entered into the lease under the assumption that respondent could lawfully install and operate a restaurant and bar on the second floor without the necessity of any substantial structural alterations or repairs to the building itself, and that *both* parties were ignorant of the structural weaknesses of the building which would prevent such use unless such work was done.

Appellant makes no contention that the trial court did not make complete findings of fact or that such findings are not supported by substantial evidence. Appellant's contention is that, *as a matter of law,* there was no ''mutual mistake'' under the facts as found which would support a rescission of the lease.

█ The basis of the trial court's holding is clearly stated in its written opinion and decision, which is a part of the record before us and which may be considered as an aid in interpreting the findings. (*Trans-Oceanic Oil Corp.* v. *City of Santa Barbara,* 85 Cal.App.2d 776, 790 [194 P.2d 148]; 3 Witkin, Cal. Procedure, Appeal § 77, pp. 2236-2237.) It is clear that when the trial court refers to the substantial structural changes which had to be made in the building it is *not* referring to the space therein leased to respondent. Excerpts from said opinion and decision follow.

''The evidence in this case discloses that plaintiff leased from defendant, for a period of ten years, the second floor of an old brick building at Montgomery Street and Pacific Avenue, along with certain spaces in the building fronting on Pacific Avenue; that the said second floor, which was formerly used as a rooming house, was to be used by plaintiff, according to the lease, as a restaurant and bar; that there were other tenants in the building who occupied space on the Pacific Avenue frontage under the second floor; that the premises (second floor) were leased in an 'as is' condition; that before the demised premises (second floor) could be law-

fully changed over from a rooming house to a public restaurant and bar certain structural changes and unusual expenses had to be made and incurred before the demised premises could lawfully be used for the purpose intended, *viz.*, as a restaurant; that some of the structural changes would have to be made outside the leased premises and over which plaintiff had no control or right to enter upon; that the lease provided that plaintiff would keep the demised premises (second floor) in good condition and comply with all the requirements of all municipal, state and federal authorities pertaining to the *leased premises*; that in February, 1961, and subsequent to the execution of the written lease, plaintiff requested defendant to make the structural changes in *building* to conform with the San Francisco Building Code, fire and safety regulations, etc., so that the leased premises (second floor) could be used for the purpose specifically intended under the lease, namely, a restaurant and bar; that the defendant refused, and still refuses, to do anything whatsoever to the building, claiming that plaintiff took the demised premises 'as is', notwithstanding the changes were structural and would apply to floor loading, earthquake loading, installation of joist anchors to support the second floor, installation of posts and girders to support the roof, fire-resistant work to comply with the law; unlawful exits, earthquake bracing of the building, removal of skylights, etc. so as to have the *building* itself conform to the Building Code, fire and safety regulations of the City and County of San Francisco.

"It is my opinion:

"1. That though there were no representations made by the defendant with respect to the leased premises, there was a material mutual mistake of fact, to-wit: that the demised premises (second floor) could be used as a restaurant and bar without any structural changes in the brick building; that it was not within the contemplation of the parties at the time the lease was executed that very costly structural changes to the *building* itself would have to be made by either party so that the second floor could be used lawfully as a restaurant.

"2. That the *demised premises* were not fit for the purpose intended.

"3. That substantial structural changes had to be made in the *building* (not the leased premises) in accordance with the

codes and regulations of the City and County of San Francisco before the second floor could be used as a restaurant and bar, which changes in the building would be of lasting, substantial benefit to the defendant landlord.

"4. That there is no provision in the lease compelling plaintiff to make any structural changes in the *building* and outside of the demised second floor. The authorities indicate that when this responsibility is placed upon the tenant it must be spelled out in clear and unambiguous language in the lease.

"5. The provisions in the lease referring to the lessee keeping the premises in good condition and complying with the requirements of municipal, state and federal authorities refer to imperfections on the second floor and not to inherent structural defects in the *building itself*, even though the structural changes became necessary for the occupancy of the second floor as a restaurant. The responsibility for doing the latter, under the evidence and the law, is upon the defendant landlord.[2]

"6. That though structural changes need not be substantial, they were in this case, because the evidence here shows estimates running from $7,130 to $37,500 to make the *building* conform to law."[3]

Appellant contends that respondent is precluded from relying upon mistake as a ground for rescission (Civ. Code, § 1689) by reason of the provision in section 1577 of the Civil Code that such mistake must be one "not caused by the neglect of a legal duty on the part of the person making the mistake . . . ."

The argument is that respondent was negligent in not ascertaining the structural defects in the building before entering into the lease. This is a question of fact to be resolved by the trial court. Appellant had owned the building for 18 years and she was not aware of such defects. Respondent's son, who acted for respondent in the entire transaction, had had no training or previous experience which would or should have raised any question in his mind as to the structural

---

[2]The lease, which was prepared by appellant's agent, contains the following provision: "FIFTH: That the lessee will, at his sole cost and expense, keep and maintain the said premises and every part thereof, except the roof and sidewalls, (which the lessor agrees to repair) . . . ."

[3]The finding of fact is as follows: "[T]he Court further finds that before the demised premises (second floor) could lawfully be used in an 'as is' condition, substantial structural changes had to be made to the building; that the cost of said structural changes was in excess of the sum of $20,000. . . ."

capacity of the building. The engineer who was called in by respondent's architectural designer in order to help him with the plans and specifications for the work to be done in the installation of the restaurant and bar testified that a non-expert could not tell from physical observation of the building that substantial structural work would have to be done to it before a restaurant and bar could lawfully be installed and operated on the second floor.

Our Supreme Court has declared that "not all carelessness constitutes a 'neglect of legal duty' within the meaning" of section 1577 of the Civil Code. (*M. F. Kemper Constr. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 702 [235 P.2d 7].) We do not think that the circumstances of this case require a holding that respondent's failure to discover the defects in question until after the lease was signed constituted such a "neglect of legal duty" as would bar a recovery herein as a matter of law.

Appellant cites a number of cases dealing with the sale or demise of an *entire* structure. The one chiefly relied upon is *Vickerson* v. *Frey,* 100 Cal.App.2d 621 [224 P.2d 126], wherein plaintiff bought a building consisting of two apartments and a basement which plaintiff intended to remodel into a third apartment. Unknown to both parties the height of the basement ceiling was six inches less than the minimum required by law.

Rescission was denied on the ground that the mistake related only to "*a portion of the property under purchase*" (p. 627) and that the use of the basement as an apartment was not impossible but merely more costly than contemplated, for the basement floor could be lowered 6 inches and thus comply with the law. (Italics ours.)

In the instant case the mistake relates mainly to that portion of the building *not* under lease to respondent, a portion over which respondent had no right of possession or control.

In *Vickerson, supra,* the court pointed out that the mistake therein was one "pertaining to a collateral matter, . . . the *feasibility* of converting the basement into living quarters." (P. 628, italics added.) It distinguishes *Hannah* v. *Steinman,* 159 Cal. 142 [112 P. 1094], wherein rescission was granted, on the ground that in *Hannah* "the parties contemplated that the lessee could use the lot to advantage only by constructing wooden buildings, and that he was taking it for such use." (P. 628.) (In *Hannah,* the building of a wooden building was prohibited by city ordinance.)

■ In the instant case the evidence substantially supports the conclusion that it was contemplated by both parties that the respondent-lessee could use the demised premises to advantage only by constructing and operating a restaurant and bar therein and that such premises were leased only for such use.

While there is no zoning prohibition involved herein, there is no conflict in the evidence as to the impossibility of using the leased portion of the building for a restaurant and bar without structural changes or repairs first being made to the undemised portions of the building. The dispute exists only as to the extent and cost thereof. There is no purpose in discussing the details of this difference of opinion since appellant has at all times remained adamant in her refusal to do any of such work.

Appellant seizes upon a finding by the trial court "[t]hat the demised premises were not fit for the purpose intended" and implies that its decision rests upon this finding alone. Appellant overlooks the findings with respect to the mutual mistake of the parties as to the defective condition of the *undemised* portions of the building, all of which has been discussed above.

■ Appellant's final contention is that the trial court abused its discretion in ordering her to return the entire $8,000 which respondent had paid under the lease without making any allowance or deduction for the reasonable value of the use of the leased premises during the period between the effective date of the lease and the formal notice of rescission, on March 7, 1961.

Specifically, appellant relies upon the following provision of section 1692 of the Civil Code: "If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties."

Prior to the execution of the lease involved herein, the second floor had not been used or rented since 1946, a period of 14 years. Furthermore, there was testimony that the building lacked structural integrity regardless of the use to which it was put and that the condition of the floor of the demised portion fell considerably below the legal requirements for habitation.

These factors, combined with the fact that respondent was

never able to actually use the premises in question, lead us to the conclusion that the trial court did not abuse its discretion in not awarding any compensation to appellant for the use of the premises during the short period in which respondent was in constructive possession thereof.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied September 16, 1965.