**RELIANCE FINANCE CORPORATION and Romer, O'Connor & Co., Inc., Appellants,**

v.

**Clyde E. MILLER and Arline A. Miller, Appellees.**

**No. 75–2216.**

United States Court of Appeals, Ninth Circuit.

July 18, 1977.

Victor J. Haydel, III, argued, Farella, Braun & Martel, San Francisco, Cal., for appellants.

William F. Murphy, San Mateo, Cal., argued for appellees.

Before CHOY and KENNEDY, Circuit Judges, and FERGUSON,* District Judge.

FERGUSON, District Judge:

This case arose as the result of the sale of a California collection agency, Romer, O'Connor & Company, Inc. ("Romer"). When business became impaired shortly after the consummation of the sale, the purchaser, Reliance Finance Corp. ("Reliance") and the Romer agency sued the seller, Clyde E. Miller, for damages and rescission on a number of theories. Mrs. Miller, who joined in the sale, was also named in the complaint but played no active role in the events at issue. Federal jurisdiction was predicated on the alleged violation of 15 U.S.C. § 78j(b) and Rule 10b–5; pendent claims were stated under state securities law and on several other theories (fraudulent misrepresentation, negligent misrepresentation, failure of consideration, breach of contract and breach of warranty). The complaint was amended just prior to trial to add an additional count, mutual mistake of fact. Defendants stated several counterclaims, seeking payment on a promissory note made and executed by Reliance in connection with the sale, damages for breach of an employment contract between Miller and Reliance and related expenses due in connection therewith, money due under a contingent fee contract between Miller's law firm and Reliance, and damages for injury to Miller's credit reputation and for defamation. The 8-day trial was to the court. The trial judge found for the seller, Miller, and entered findings of fact and conclusions of law. Reliance appeals. We affirm.

Although the parties dispute many basic factual points, the general course of events leading to the litigation is fairly clear. Romer, incorporated in 1932, was a relatively successful collection agency with offices in San Francisco and Los Angeles. It had an annual volume of business of nearly $2.6 million. A substantial portion of Romer's work stemmed from a single client, the Atlantic-Richfield Company ("ARCO"), whose retail and wholesale divisions provided 48 percent of the San Francisco business and 65 percent of that in Los Angeles. During the course of a long association with the agency, Miller, a lawyer, and his wife Arline had become the sole owners of all Romer stock.

Early in 1973, Miller decided to sell the business. He began negotiations with officials of the Van Ru Credit Corporation, a competitor of Romer. Negotiations with Van Ru ultimately stalled, allegedly because ARCO could or would give no assurances of continued business with Romer, and because the parties could not agree on a formula for reducing the purchase price if Romer's volume of business declined. Allen Trant, a former lawyer and businessman in the collections field, also became interested in the business. In July 1973, Miller permitted an accounting firm chosen by Trant to audit Romer's books. Trant eventually became a middleman and agent for Reliance, a Hawaiian corporation. Throughout the negotiations, Miller asked that all discussion be kept confidential and that no contact with Romer's clients be made. He repeatedly refused to guarantee that current clients of Romer would continue their business with the firm. He did, however, stress that Romer had enjoyed lengthy and pleasant relationships with a number of its clients, including ARCO, and claimed that he knew of no information indicating that ARCO or any other client intended to reduce or terminate its business with the agency.

A lengthy contract to purchase the stock of Romer was drafted and signed by Miller on September 20, 1973. The contract referred to a September 29 closing date and contained no escrow provisions. It was

---

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

signed by Reliance's officers on October 8. While there was at trial substantial disagreement as to the effective closing date of this agreement, that dispute has not been pursued on appeal. Two related agreements were also entered into at this time, the first employing Miller as a business and management consultant to Reliance once the Romer agency changed hands, and the second utilizing Miller's law firm to do legal work in connection with collection claims on a contingent fee basis for a set term.

Reliance's acquisition of Romer was spectacularly unsuccessful. Within days the business was in trouble. Late in October, ARCO announced the suspension of all retail business in Los Angeles, and the reduction of its San Francisco business by 50 percent. It stated that its decision was primarily due to a comparison of Romer's rate of collection with that of its competitors. Similar problems befell the ARCO wholesale accounts, which amounted to at least 50 percent of ARCO business in Los Angeles. On October 5, the ARCO wholesale representative advised Miller that business would be withdrawn from the Los Angeles office unless a dispute between Miller and his erstwhile law partner, Jack Murphy, were resolved and problems concerning legal supervision and control over collection procedures remedied. A short time later, ARCO did in fact take such action. As a result of these and other client withdrawals, Reliance estimates that 80 percent of Romer's business was lost.

Appellants would fault Miller on two grounds. First, they argue, he breached his duty to inquire and to disclose information which he had or should have had concerning the substantial loss of business that resulted shortly after the sale of the Romer stock to Reliance. Second, they point to a special study of Romer's client trust accounts completed in September 1974 by a private accounting firm commissioned by Reliance. Using different accounting methods than those employed by Romer, the study concluded that, although the trust accounts properly reflected monies received from debtors, liabilities due Romer clients were understated by approximately $33,000 in June and September 1973 (the month the agency was sold), and that as a result income figures were inflated by about $9,000 to $10,000. Reliance contends that this "irregularity" in Romer's accounting system has two-fold significance: that it serves as an additional basis for their misrepresentation claim and that it in and of itself resulted in a mutual mistake which should trigger the remedy they seek, rescission.

The issues on appeal are rather inartfully framed: appellants' argument seems to be that the trial court erred in failing to find in their favor on any and all theories of recovery. In order to consider the merits of this claim systematically, however, we must utilize a three part analysis: (1) did the court err in its handling of appellants' 10b–5 and misrepresentation claims? (2) should the court have granted rescission because of mutual mistake of fact? (3) did the court improperly reject appellants' failure of consideration and breach of warranty theories?

## I. *Rule 10b–5 and Misrepresentation*

In formulating his findings of fact and conclusions of law, the district judge carefully considered the application of the "flexible duty" standard of *White v. Abrams,* 495 F.2d 724 (9th Cir. 1974), to this case. Because the purchasers were familiar with the unstable collection business and because Miller agreed to and did make available to them for study all of the Romer financial documents, the judge concluded that Miller's duty "was one of less than extreme care." Although Miller was obliged to make reasonable inquiry regarding any foreseeable loss of business and to disclose material information accumulated in the course of that investigation, the court concluded that this duty was not breached.

During the pendency of this appeal, the Supreme Court in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), has held that scienter, not simply negligence, is the necessary predicate to liability under Rule 10b–5. If the record supports the trial court's deter-

mination that Miller did not fail to proceed with even the low standard of care demanded by *White,* it follows *a fortiori* that under the *Ernst* rule no liability would accrue.

■ The court below found that Miller did not receive formal notification of the loss of ARCO's retail business until October 29, 1973, after the sale had been completed. Although Reliance contended that Miller had earlier been informed of the imminent loss of business by his law partner, Jack Murphy, the district judge found otherwise. Murphy's inability to remember the source of his information and his failure to commit such vital information to writing gave the trial judge sufficient grounds for disbelief and we cannot say that his finding is clearly erroneous. *Butler v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 528 F.2d 1390, 1391 (9th Cir. 1975).

Reliance also claimed that Miller failed to disclose that loss of ARCO's wholesale business was imminent. Miller testified that he had fully revealed all relevant information to Allen Trant, Reliance's agent, early in October. Trant said otherwise. That the court believed Miller rather than Trant is, again, not clear error. Nor was there knowing misrepresentation or failure to disclose material information concerning the status of Romer's trust accounts. The court found that Miller, who is not an accountant, had no reason to know and could not reasonably have known of the allegedly irregular procedures which only came to light a year after the sale as a result of a study specially commissioned by appellants. It appears from the record that the court could not have found otherwise. We must therefore conclude that there was no violation of the federal securities laws in the course of this transaction.

■ Appellants' pendent misrepresentation claims fare no better. As we have just observed, the evidence supported the trial court's determination that there was no intentional or negligent misrepresentation. Reliance would now present a further theory, however: innocent misrepresentation. No such claim was made a part of the complaint, however, either in its original or amended form. Whether or not innocent misrepresentation is akin to mutual mistake of fact, appellants' failure to raise this theory before the district court precludes their raising it here. *Moore v. Great Western Savings & Loan,* 513 F.2d 688 (9th Cir. 1975).

## II. *Mutual Mistake of Fact*

Reliance also sought rescission on the theory that neither buyer nor seller was aware that financial statements, relied upon during the parties' negotiations, significantly understated the liabilities due Romer's clients. Although this issue has repeatedly been tagged as a "trust account" problem, it is important to note that the difficulty did not arise in connection with the trust *bank account,* but rather with Romer's *accounting procedures.* It is undisputed that Romer's trust account properly reflected monies received from debtors and that no defalcation of funds had occurred. Rather, by retracing disbursements later made to clients, appellants attempted to show that the accounting entry which purported to represent the sums due clients out of trust account funds was in error and should have been significantly higher. This understatement of liabilities vis-a-vis funds received, they argue, led Reliance to assume that Romer had a higher profit margin than was in fact the case and to anticipate that a substantial sum could be safely diverted from the trust account to be used us working capital in the business.

Two key witnesses testified on this point at trial: John Kaneshige, an accountant with Kimble, Faris, McKenna & von Kaschnitz, who was responsible for the trust account study commissioned by Reliance, and Arnold Avritt, an accountant long associated with the Romer agency during Miller's tenure there. Their testimony was primarily directed to the legitimacy of the methods used by the Kimble firm to establish that an understatement existed. Little additional effort was directed to explaining whether the difference in the balances reflected in the Kimble study and those shown on the Romer books resulted merely

from variances in accounting methods, or from procedures used to ensure an orderly transfer of money paid by debtors to creditors while providing for the proper handling of bad debtor checks and profits earned by the collection agency.

In the face of the rather confusing testimony and exceedingly slim documentary evidence, the trial court found as a matter of fact that the accounts were understated. Unfortunately, however, he did not specifically address the mutual mistake claim in any of his conclusions of law. Reliance therefore contends that at the very least the case must be remanded for further proceedings on this point.

■ The issue of whether there was a mutual mistake of fact, of course, must be determined under the *Erie* doctrine according to California law. Rather than leaving the matter solely to common law development, California has codified the requirements for rescission on the basis of mistake as part of the Civil Code. Section 1689(b) provides in pertinent part that "A party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding . . . was given by mistake . . . ." Section 1577 defines mistake of fact, insofar as is relevant here, as "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract . . . ." Section 1568 is also relevant: "Consent is deemed to have been obtained through [mistake] only when it would not have been given had such [mistake] not existed."

■ California case law suggests that there is more to the law of mistake than might be apparent from the simple language of these statutes. While California courts appear never to have adopted the traditional requirement that rescission may

be obtained only where mistake goes to the identity of the matter bargained for (*e. g., Costello v. Sykes,* 143 Minn. 109, 172 N.W. 907 (1919); *Hecht v. Batcheller,* 147 Mass. 335, 17 N.E. 651 (1888); *Wood v. Boynton,* 64 Wis. 265, 25 N.W. 42 (1885)), they require that, in addition to being material, the mistake must pertain to the essence of the contract. (*Hannah v. Steinman,* 159 Cal. 142, 112 P. 1094 (1911); *Reid v. Landon,* 166 Cal.App.2d 476, 333 P.2d 432 (1958); *Estate of Barton,* 96 Cal.App.2d 234, 239, 214 P.2d 857 (1950)).[1] It has likewise been said by California courts that it must be other than incidental (*Reid v. Landon, supra; Vickerson v. Frey,* 100 Cal.App.2d 621, 224 P.2d 126 (1950)), and that it must involve more than a collateral matter (*Hannah v. Steinman, supra; Wood v. Kalbaugh,* 39 Cal. App.3d 926, 114 Cal.Rptr. 673 (1974); *Bellwood Discount Corp. v. Empire Steel Buildings Co.,* 175 Cal.App.2d 432, 435, 346 P.2d 467 (1959)). Only if the difference between the real and supposed quality or characteristic of the item sold is of such magnitude as to make it virtually a different thing will relief be granted. (*Vickerson v. Frey, supra*). In *Roller v. California Pacific Title Ins. Co.,* 92 Cal.App.2d 149, 206 P.2d 694 (1949), the court detailed the rule as follows:

> "A mistake as to a matter of fact, to warrant relief in equity, must be material, and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view, and not be merely incidental. The court must be satisfied, that but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved." 92 Cal.App. at 157, 206 P.2d at 699, quoting *Grymes v. Sanders,* 93 U.S. 55, 60, 23 L.Ed. 798 (1876).

Although articulating this idea in a number of different ways, it is evident that the courts have rather universally hesitated to

---

1. The rule included in the Restatement of Restitution § 9 reflects this idea as well. To warrant rescission, mistake must be "basic," *i. e.,* be an error "as to a fact or rule of law constituting the assumed basis upon which the transaction rests." Restatement of Restitution § 9, comment (c) (1937); Restatement of Contracts § 502, comments (a), (c) (1932). *See also* Note, 35 Harv.L.Rev. 757 (1922).

**680**

undermine the stability of commercial transactions without serious provocation.

■ While we recognize that some California cases have failed to apply any more stringent standard than that of materiality in determining whether rescission may be granted (*Healy v. Brewster*, 251 Cal.App.2d 541, 551, 59 Cal.Rptr. 752 (1967) (materiality); *Williams v. Puccinelli*, 236 Cal.App.2d 512, 46 Cal.Rptr. 285 (1965) (no stated test); *Adams v. Heinsch*, 89 Cal.App.2d 300, 200 P.2d 796 (1948) (no stated test)), we here follow the more prevalent California rule which requires that the mistake go to the essence of the contract. But because rescission is also available in California on the basis of innocent misrepresentation (*Crocker-Anglo Nat'l Bank v. Kuchman*, 224 Cal. App.2d 490, 36 Cal.Rptr. 806 (1964)), it is all too easy to confuse these two distinct doctrines and to assume that a simple materiality test applies to both (e. g., *Brown v. Klein*, 89 Cal.App. 153, 264 P. 496 (1928)). Proof of innocent misrepresentation is more complex than might appear to superficial analysis. Traditionally, rescission may be granted on this theory where the misrepresentation is material (*i. e.*, nontrivial), where it concerns a material fact (*i. e.*, one that would be taken into account by a reasonable person in deciding whether to enter into the transaction) (Restatement of Restitution § 9, comment (b) (1937); Restatement of Contracts § 476, comment (b) (1932)), and where the rescinding party has both actually and reasonably relied on the representation in entering the contract to his detriment (Restatement of Restitution § 8, comment (e) (1937)). The prerequisites for relief based on mutual mistake, that the mistake be material (*i. e.*, nontrivial) and that it go to the essence of the contract, may really encompass the same facts and concerns, although articulated in different terms. Despite this apparent overall equilibrium, care must be taken not to introduce an erroneous equation and one-to-one correspondence between individual elements of proof. Material, in any of its several connotations, is not the same as basic or essential, and "there is a greater requirement of materiality when rescission is asked on the grounds of mistake than when the theory is 'fraud' [including innocent misrepresentation]." Note, 12 Hastings L. J., 458, 465 (1961). We, therefore, also decline to treat the California innocent misrepresentation cases cited by appellants as controlling California law on the issue of mutual mistake. In each case the issue of materiality was either not disputed (*Brown v. Klein, supra*) or assumed for purposes of the issue on appeal (*Crocker-Anglo Nat'l Bank v. Kuchman, supra*). Similarly, the question under Civil Code § 1568 of whether plaintiffs would not have entered the transaction but for the misrepresentation was not before those appellate courts. We cannot therefore, say that the results reached in those cases should govern here, where the problem is framed in terms of the distinctive analytic framework of mistake.

■ As we have already noted, the trial court made only very limited findings concerning the status of Romer's liabilities due clients account and did not specifically direct any of its conclusions to appellants' mutual mistake theory. Although the district judge found the liability account to be understated, it might be inferred from his failure to hold that the understatement was of the amount claimed by Reliance, that appellants failed to meet their burden of proof in establishing the amount of understatement to be more than trivial (and therefore material). The district court's discussion of risk may also be seen to imply that appellants failed, pursuant to Civil Code § 1568 to prove that they would not have entered into the contract were it not for their belief that the accounts were as represented. We need not rest our affirmance on the trial court's refusal to grant relief on these grounds, however, for we are able to conclude from the present record, *see Fluor Corp. v. United States ex rel. Mosher Steel Co.*, 405 F.2d 823, 828 (9th Cir.), *cert. denied*, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40 (1969); *Seligson v. Roth*, 402 F.2d 883, 887 (9th Cir. 1968), that the mistake was less than basic.

*Hannah v. Steinman, supra*, 159 Cal. 142, 112 P. 1094 the leading California case on

the issue, counsels that the court must look to the intention of the parties in determining whether the mistake goes to the *essence* of the contract. Here, appellants, relying on the trial testimony of their accountant Kaneshige, have characterized the effect of the alleged understatement as reducing the money available for working capital and decreasing their expected profits. While they have also suggested in a passing reference in their supplemental brief that an understatement of client liabilities affected the collection agency's value, they nowhere in the trial testimony or exhibits established or sought to establish to what extent this might be so. The availability of working capital is undoubtedly a collateral matter which, although it might be material to a potential purchaser, cannot be said to relate to the *very essence* of the bargain. Nor can an erroneous calculation of expected profits based on the figures provided by Miller justify rescission. While the expectation of profit was undoubtedly also an inducement to the contract, it does not lie so close to the heart of the bargain as to qualify as basic mistake.

### III. *Failure of Consideration and Breach of Warranty*

■ A. *Failure of Consideration.* Material failure of consideration is a ground for rescission under California law. Civil Code § 1689(b)(4) (West 1973). The trial court specifically found that "there was no material failure of consideration in regard to any of the three contracts germane to this action." The district judge's broad statement on its face covers both loss of clients and accounting irregularities. We will, however, consider these two points separately.

■ The trial judge specifically noted that Reliance "was aware of the nature of the business it was buying and knowingly bought a risk." This conclusion was substantially supported by the evidence in the case. Miller insisted that he could not guarantee the continuity of client business, and a provision to this effect was incorporated into the contract. The Restatement of Contracts § 502, comment (f) recognizes that "Where the parties know that there is doubt in regard to a certain matter and contract on that assumption, the contract is not rendered voidable because one is disappointed in the hope that the facts accord with his wishes. The risk of the existence of the doubtful fact is then assumed as one of the elements of the bargain." *See Tombigbee Constructors v. United States*, 420 F.2d 1037, 1043, 190 Ct.Cl. 615 (1970). The court's determination on this facet of the failure of consideration claim must also stand as not clearly erroneous.

■ Appellants complain that the district court's finding that there was an understatement of client liabilities contradicts its broad finding that there was no material failure of consideration. We see no such contradiction, for the court did not adopt appellants' calculation of the alleged understatement. Even if Reliance's figures had been accepted, we would find it impossible to say that, when the transaction was considered as a whole, the trial court erred in finding that the failure of consideration that resulted was not so substantial as to warrant rescission. *See Taliaferro v. Davis*, 216 Cal.App.2d 398, 412, 31 Cal.Rptr. 164 (1963); *Crofoot Lumber, Inc. v. Thompson*, 163 Cal.App.2d 324, 332–333, 329 P.2d 302 (1958).

■ Nor is reversal mandated due to the lack of specificity of the court's findings on this point, *Graham v. United States*, 243 F.2d 919, 923 (9th Cir. 1957). As the Temporary Emergency Court of Appeals in *Evans v. Suntreat Growers & Shippers, Inc.*, 531 F.2d 568, 570 (1976) recently stated:

The trial court did not make findings of special facts or computations on which it based Finding # 15. Appellants did not propose additional or alternate findings nor did they apply to the district court for an amendment of its findings under Rule 52(b) F.R.Civ.P. *See Kennedy v. United States*, 115 F.2d 624 (9 Cir. 1940). We agree with the statement that "It would seem that if a party is not willing to give a trial judge the benefit of suggested findings and conclusions,

he is not in the best of positions to complain that the findings made and conclusions stated are incomplete. *Sonken-Galamba Corp. v. Atchison, T. & S. F. Ry.*, 34 F.Supp. 15, 16 (W.D.Mo. 1940), *aff'd* 124 F.2d 952 (8 Cir. 1942), *cert. den.*, 315 U.S. 822 [62 S.Ct. 917, 86 L.Ed. 1218] (1942)."

Appellants rightly contend that such failure does not prevent them from attacking a finding which is erroneous. But as to Finding # 15 they cannot complain of lack of specificity in the findings, when they proposed nothing to this effect.

B. *Breach of Warranty.* The court below found that Miller had not breached any of the warranties in the contract of sale. That the loss of clients breached no warranty is literally true, for Miller neither warranted nor represented that he could in any way guarantee that clients as of the time of sale would stay with the business. A provision in the contract stated: "SELLING PARTIES do not, however, warrant the continuity or continued placement of claims by the present customers of CORPORATION or the number, dollar value or quality thereof."

■ The issue is a more difficult one with regard to the accounting irregularities. Appellees urge that we interpret the trial court's statement to mean that language contained in the contract of sale involved merely representations, not warranties. Examination of the contract reveals, however, that the following statement was included in article II (titled "warranties and representations"):

"The CORPORATION has no debt, liability, or obligation of any nature, whether accrued, absolute, contingent, or otherwise, and whether due or to become due, that is not reflected or reserved against in the CORPORATION'S consolidated balance sheet of July 31, 1973, included in the financial statements or set forth in Exhibit 'B' to this Agreement, except for those that may have been incurred after the date of that consolidated balance sheet and that are not required by gener-

ally accepted accounting principles to be included in a balance sheet. . . ." Williston suggests that distinguishing between warranties and representations in this context is inappropriate. 8 Williston on Contracts § 954 (3d ed. 1964), citing *Carolet Corp. v. Garfield*, 339 Mass. 75, 157 N.E.2d 876 (1959). We agree. Proceeding beyond this initial stage of analysis, however, we must consider appellants' warranty claim in the context in which it is raised.

■ In count ten of their complaint appellants sought damages on the theory that breach of the contract warranties constituted a breach of the contract as a whole. No distinct claim for damages resulting from a failure to comply with the warranty provisions was asserted. Both at trial and on appeal, their focus has been on rescission. They sought to show that the accounts were in fact understated, but made no attempt to prove what damage resulted from this state of affairs. The only documentary support for the allegations of understatement was a letter from the accountant hired by Reliance after the sale, two letters from the Kimble firm stating in three sentences the sum total figures relied on in reaching its conclusion about Romer's books, and two xeroxed worksheets containing one addition and three subtractions. The testimony of appellants' witnesses was of no greater substance, dwelling as it did on the techniques used in concluding that there was an understatement, not proving or attempting to prove what net injury occurred to appellants as a result. Appellants' initial and reply briefs on appeal raised no claim of error with regard to the trial court's failure to award damages reflecting the effect of the accounting irregularities on the collection agency's value. While the final pages of their supplemental brief (limited by our order to the issue of mutual mistake) did ask for other relief under California Civil Code § 1692 should rescission be an inappropriate remedy, they may not now resurrect a theory which they have never really embraced or at the very least have already abandoned. A question that has been presented to the district court for a ruling

and which has not thereafter been waived or withdrawn is preserved for review. *United States v. Harue Hayashi*, 282 F.2d 599, 601 (9th Cir. 1960). *But cf. Graham v. United States, supra*, 243 F.2d 919. No such preservation will occur, however, when, as in the instant case, an issue has been raised in the pleadings but is not pressed at trial. *See Santa Clara Valley Distrib. Co. v. Pabst Brewing Co.*, 556 F.2d 942, at 945 (9th Cir. 1977); *Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972).

The sole remaining question is therefore whether the trial court erred in refusing to grant rescission under a breach of contract theory. The courts in California as elsewhere have recognized that if a party substantially performs his obligations under a contract, he will not be found in total breach and the other party's performance will not be excused. *Posner v. Grunwald-Marx, Inc.*, 56 Cal.2d 169, 187, 14 Cal.Rptr. 297, 363 P.2d 313 (1961). And restitution may not be given "unless the defendant's non-performance is so material that it is held to go to the 'essence'; it must be such a breach as would discharge the injured party from any further contractual duty on his own part . . .." *Crofoot Lumber, Inc. v. Thompson, supra*, 163 Cal.App.2d at 333, 329 P.2d at 308; 5 Corbin on Contract § 1104 at 564 (1960).

We have already upheld the trial court's determination that there was no material failure of consideration. See part III A *supra*. The very same accounting variances take on no more significant statute when considered from this slightly different vantage. The trial court quite correctly refused to grant rescission and restitution.

The judgment is

AFFIRMED.