[Civ. No. 17240. First Dist., Div. Two. July 22, 1957.]

ARTHUR L. ADKINS, Appellant, v. CLAES V. S. WYCKOFF et al., Respondents.

Howard B. Crittenden for Appellant.

Schofield, Hanson & Jenkins for Respondents.

O'DONNELL, J. pro tem.*—This is an appeal by plaintiff from a judgment denying him any relief under any of his five causes of action.

Defendant Wyckoff had been for some time engaged in the advertising business. In 1952 he formed the defendant corporation (then named Wyckoff & Downard, Inc.) for the purpose of carrying on the advertising business. Three hundred shares of capital stock were issued to Wyckoff. He trans-

*Assigned by Chairman of Judicial Council.

ferred some of these shares to Downard. Later Downard left the business and Wyckoff reacquired his stock. Wyckoff thus again owned all of the outstanding stock.

Plaintiff was also in the advertising business. Plaintiff and Wyckoff decided to join forces. By written contract dated August 1, 1953, plaintiff agreed to buy 150 shares of the 300 shares of stock outstanding for $1,695 cash, agreed to pay to the corporation an amount equal to the net working assets of the corporation and agreed to transfer the assets of his advertising business to the corporation. By further terms of the contract each party agreed to devote his full time to the business of the corporation. The salary provision of the contract reads:

"To Wyckoff the sum of $750.00 per month as president of said corporation. To Adkins the sum of $300.00 a month as vice-president of said corporation, provided however, that this sum shall be increased as the increased profits anticipated from said merger shall accrue to said business, it being the intention of the parties that said salary shall be equal to that of the said Wyckoff by the end of one year from the date of this contract; and provided further, that said anticipated date is not fixed, and that said salaries will at all times be subject to the revenues of the business being available for that purpose."

Thereupon, plaintiff paid Wyckoff the agreed purchase price of the 150 shares of stock, paid the corporation $2,820 to equal the corporation's net working assets, transferred the assets of his business to the corporation and commenced his employment with the corporation. The name of the corporation was then changed to Wyckoff and Adkins, Inc.

Differences arose between plaintiff and Wyckoff which resulted in plaintiff instituting proceedings to dissolve the corporation in October, 1954. Plaintiff thereupon left the employ of the corporation and instituted the present action.

The first count of the complaint is for the recovery of $5,762.50, being the difference between the salary actually paid plaintiff and a salary computed at the rate of $750 per month, to which plaintiff claims to be entitled. The second count states a cause of action for declaratory relief, alleging that a dispute exists as to the proper interpretation of the above quoted salary provision of the contract. The third count is a common count in which plaintiff seeks recovery of the reasonable value of his services to the corporation which he alleges to be at the rate of $750 per month. The fourth count

seeks damages for fraud. Plaintiff alleges that all of the defendants misrepresented the financial condition of the corporation, including the amount of its net working assets. By the fifth count plaintiff seeks recovery of the sum of $1,695 paid by him for the 150 shares of stock, on the ground that the stock was issued in violation of the Corporation Commissioner's permit. Defendants answered the complaint, denying generally its allegations. The trial court found against plaintiff on all five causes of action and awarded judgment to defendants.

The first, second and third counts of the complaint, all of which have to do with plaintiff's salary claim, will be discussed together.

Plaintiff advances several contentions respecting the interpretation of the salary provision of the contract quoted above. He first says that that provision should be interpreted to mean that he is entitled to a salary of $750 per month when the corporation realizes net profits of $750 per month that accrue from business brought into the corporation by plaintiff himself. His next argument is that the fact that Wyckoff was regularly paid $750 per month constitutes a determination by the corporation that there are sufficient revenues to pay both plaintiff and Wyckoff that amount. Finally, he says that to allow Wyckoff a salary of $750 per month, when there are insufficient profits of the corporation to pay both of them that amount, violates the intent of the contract. The trial court, however, found in accordance with the corporation's interpretation of the contract, to wit, that plaintiff would be entitled to a salary of $750 per month only when the aggregate profits of the corporation, after first deducting Wyckoff's salary of $750 per month, were sufficient to pay that amount. We think that the trial court adopted the proper interpretation of the salary provision. Not only does the language of the salary clause bear out that interpretation, but also the conduct of the parties supports it. Plaintiff did, in fact, receive increases in salary from time to time during his employment by the corporation. He signed his own salary checks. Also, the testimony indicates that plaintiff was content, at least temporarily, with the salary increases that he received from time to time. ■ The ''construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the courts.'' (*Wood-*

*bine* v. *Van Horn,* 29 Cal.2d 95, 104 [173 P.2d 17].) Moreover, the evidence does not support plaintiff's contention that he brought net income of $750 per month into the corporation.

With respect to the fraud count of the complaint, plaintiff's principal contention is that the trial court's findings are not supported by the evidence. More specifically, plaintiff asserts that Wyckoff represented that the corporation was operating at a profit, whereas, in fact, he says it was not. Also, that Wyckoff and the other defendants represented that the net working assets of the corporation had a value of $2,820, whereas in fact, so plaintiff says, the net working assets were worth substantially less than that amount. With respect to profits, the evidence was clear to the effect that the income of the corporation had always been sufficient to allow Wyckoff to draw $750 per month from the corporation as salary. That plaintiff considered that the amount withdrawn as salary is included in the term ''profit'' as that term is used in the advertising business is clear from his own testimony. He stated that he considered ''profit'' to be, ''how much was left for me, including salary.'' Moreover, plaintiff's own conduct following the merger of August 1, 1953, indicates that he was neither misled by Wyckoff's representations regarding the profits of the business, nor was he dissatisfied with the business. His only dissatisfaction was with his $300 per month salary. He testified: ''I had made some studies up to that time, as I mentioned before. We had been working pretty hard, putting it together, and I made quite a few studies after January, and began to get the figures together as to what was going on. And then I discovered that the billing that he represented he had was not the amount that he said he had, and that the costs were higher than he said he had, and that he was drawing $750 a month out of the thing, and I was getting that $300, and I thought we should live up to that agreement. That was down at Foster's restaurant (in January, 1954) where we had coffee that that came out there for the first time.'' Thereafter, plaintiff received increases in salary until it attained the sum of $500 per month. It thus clearly appears that plaintiff remained with the corporation for some eight or nine months following his investigation of the financial affairs of the company, accepted his salary, and made no complaint of fraud. The real basis of plaintiff's dissatisfaction with the business was betrayed in the following testimony: ''Q. And was that what started the difference between you and Mr. Wyckoff, your personality differences? A. That was

the main difference. There were minor things that did not amount to too much.'' ■ To make out a case of actionable fraud it must appear that the alleged false representation was of a material fact; and to be material it must be such that the contract would not have been entered into without it. (*Andrew* v. *Bankers & Shippers Ins. Co.*, 101 Cal.App. 566 [281 P. 1091].) ■ Thus, even assuming that Wyckoff misrepresented the profits of the business to some extent (which is highly questionable even under plaintiff's interpretation of the evidence) still plaintiff's conduct and testimony above referred to demonstrate that such representation was not a material inducement to his entering into the contract with Wyckoff.

We consider now plaintiff's contention that the amount of net working assets of the corporation were misrepresented. It appears that this amount was composed not only of actual cash in the bank but also of items of cash advanced by the corporation on behalf of its clients. The total net working assets were estimated to be $2,200. Plaintiff was informed that this was not an exact figure. It developed that the corporation's bookkeeper had included under this heading certain items that should have been carried as accounts receivable. Further, one item of some $400 that was carried as a credit under this heading subsequently proved to be not a credit at all. The value of working assets was therefore less than the books indicated. It appears, however, that these bookkeeping errors were honestly made. It further appears that during the period of plaintiff's association with the corporation he was in charge of office management, while Wyckoff did the selling. The bookkeeper and accountant were thus directly under plaintiff's supervision. Though plaintiff denied personal familiarity with the books, the trial court may well have concluded that he became fully aware of the financial condition of the corporation and was satisfied with it. Moreover, plaintiff's part in the transaction is not entirely immune from criticism. There was substantial evidence to the effect that the amount of his own business that he brought into the corporation as a result of the merger was less than he had represented it to be. ''One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, . . .'' (Civ. Code, § 3343.) ■ A fraudulent representation which does not result in damage is not actionable. (*Benson* v. *Garrett*

*Inv. Co.,* 135 Cal.App.2d Supp. 853 [287 P.2d 405].) The trial court could justifiably have concluded from all the evidence that, in the final analysis, plaintiff was not injured by his bargain.

Plaintiff also contends that Wyckoff represented to him that the month of August 1953, would be a profitable one, but that in fact the corporation sustained a loss in that month. This contention lacks merit. It is true that the corporation did sustain a loss in that month, but that was only because certain accounts receivable due that month were not received until some time later. Plaintiff does not show how this delay in their receipt worked to his detriment. Moreover, he himself testified that such delays in payment of accounts receivable were to be expected in the advertising business.

█ We consider now the fifth count of plaintiff's complaint. In support of this count plaintiff alleged that the corporation commissioner's permit authorized the issuance of stock of the corporation only when Wyckoff should transfer to the corporation assets at a net value of at least $3,000. At the trial plaintiff offered to prove that the assets which Wyckoff transferred to the corporation had a net value of less than $3,000 and that the stock of the corporation was therefore illegally issued. The trial court refused to admit any evidence on that subject. The trial court should have received the proffered evidence. █ A sale of stock made in contravention of the Corporation Commissioner's permit is void, (Corporate Securities Law, Corp. Code, tit. 4, div. 1) and the purchaser may maintain an action for the recovery of the purchase price. (*Randall* v. *Beber,* 107 Cal.App.2d 692 [237 P.2d 994] ; *Bourke* v. *Frisk,* 92 Cal.App.2d 23 [206 P.2d 407] ; *Duntley* v. *Kagarise,* 10 Cal.App.2d 394 [52 P.2d 560] ; *Klinker* v. *Guarantee Title Co.,* 98 Cal.App. 469 [277 P. 177].) In the Randall case the court said at page 701: "The applicable statute was designed for the protection of the public. Its penalties run against the corporation and those persons who participated with it in making a 'sale' contrary to its provision, not against a member of the purchasing public. If such a purchaser is not *in pari delicto,* the law accords him relief against the corporation and against any person who aided the corporation in making the sale or participated in the general scheme to sell securities."

The judgment is affirmed as to the first four counts of plaintiff's complaint and is reversed as to the fifth count.

Dooling, Acting P. J., and Draper, J., concurred.