[Civ. No. 19644. First Dist., Div. Two. May 24, 1961.]

WILLIAM G. CHALAS et al., Appellants, v. LOUIS E. ANDERSEN et al., Respondents.

Lacey, Holbrook & Meyenberg and Richard E. Holbrook for Appellants.

Noland, Hamerly & Etienne, Paul M. Hamerly and J. T. Harrington for Respondents.

SHOEMAKER, J.—This is an appeal by plaintiffs William G. Chalas and Joan Chalas, husband and wife, from a judgment refusing to rescind a contract of sale of a retail poultry business, and awarding defendants and cross-complainants Pedrazzi, assignees of said contract, the balance due thereon.

Respondents Louis E. Andersen and Maxine Andersen were the owners of a retail poultry business known as The Poultry Center, and a wholesale poultry business known as Andersen's Poultry Farm. On June 3, 1959, they entered into a contract of sale of The Poultry Center with appellants, who took over the business on or about June 15, 1959. At the time the sale was being negotiated, appellants were told by the Andersens that they had realized a net profit from the retail store during the period from October 1, 1958 to April 18, 1959, of $2,955.72, and that there should be added to this the sum of $1,932.80, which was represented by a premium charge to The Poultry Center of 4 cents per pound on chicken purchased from the Poultry Farm, as this amount had been collected from the retail establishment for the purpose of absorbing a portion of the store's profits into the farm operation. Within a week after taking over the store, appellants regretted their purchase and asked the Andersens to take back the store, which request was parried by Mr. Andersen. Thereafter appellants found on the premises of the store a carton of sales tags and business records of The Poultry Center which had been left behind by the Andersens, and on examination thereof they became convinced that the profit margin had been falsely represented to them, inasmuch as their computation developed a differential of 6 mills per pound, instead of the represented 4 cents.

Notices of rescission were served upon the Andersens and Pedrazzis, and this action for rescission followed, based upon the ground of misrepresentation and fraud in the respect above mentioned. The Andersens' answer admitted making the representation as to the premium charge of 4 cents per pound, and averred they had explained to appellants that it was an average of the premium charge made during the period October 1, 1958, to April 18, 1959, and that at the time they believed, and still do, that the representation is true. The Pedrazzis answered and cross-complained for the balance due on the contract of sale.

The case was tried by the court without a jury, and the court made its findings that the premium charged to The Poultry Center from the Poultry Farm was more than 3 cents

per pound; that the representation as to the premium charge and its effect upon the profits was not false to any material degree; that the representation was not made fraudulently or with an intent to deceive; that said representation was true to the best knowledge of the person making it and was warranted by the information then possessed by said person; and judgment was entered denying rescission and awarding the sum asked by the cross-complaint.

 Upon this appeal it is appellants' contention that the evidence was insufficient to support the findings and judgment of the trial court. Appellants assert that the evidence is all one way, namely, that the respondents made a material misrepresentation as to the 4 cents premium charged The Poultry Center, and that they intended to defraud appellants by means thereof. The evidence on the issue whether or not respondents made a material misrepresentation to appellants was in decided conflict. Both parties rely upon the business records and sales tags of The Poultry Center, which were introduced into evidence. In support of their interpretation of these documents, appellants produced the testimony of a certified public accountant who offered several schedules which he had prepared from selected portions of said records, and purported to show that the differential was only 6 mills per pound, rather than 4 cents per pound. On the other hand, the respondent Mrs. Andersen, from the same records, showed that the average premium charge was in excess of 3.4 cents per pound. The certified public accountant's testimony fell far short of establishing the contentions to a certainty for admittedly he failed to consider certain factors and did not check all the sales tags. Mrs. Andersen testified that her figures were computed from all the tags and by a method which she outlined to the court. It is true her testimony was objected to upon the ground that she was not an expert witness, and the objection upon this ground was sustained. However, the court then permitted Mrs. Andersen to testify that she had been employed as a bookkeeper, that she was familiar with invoices, and that she knew arithmetic, whereupon the court accepted her as an expert and reversed its ruling. The evidence produced by her was not objectionable on the ground that she was not qualified as an expert, for that was a matter for the trial court and the question is not one of admissibility, it is as to what weight shall be given the evidence, and this again was a matter for the trial court.

Whether the difference between the 4 cents represented to appellants and the 3.4 cents actually charged would constitute a material misrepresentation under the facts of this case was a question of fact for the trial court. In *Adkins* v. *Wyckoff* (1957), 152 Cal.App.2d 684, 689 [313 P.2d 592], this court stated:

"To make out a case of actionable fraud it must appear that the alleged false representation was of a material fact; and to be material it must be such that the contract would not have been entered into without it." To the same effect, *Crow* v. *Kenworthy* (1939), 30 Cal.App.2d 313, 315 [86 P.2d 154].

Although appellant Joan Chalas testified that she bought the store in reliance on the representation that the premium charge was 4 cents per pound, and that she at one point testified she would not have bought the business had she thought it was only 3 cents per pound, and at another time 3.8 cents per pound, her husband indicated that he did not know at what point he would have considered the difference to be material enough to have prevented him from making the purchase. In view of the evidence that the actual difference between the representation and the actual charge was only 6 mills per pound, the trial court had sufficient evidence on which to base its finding that the misrepresentation was not material and was justified in concluding that appellants would still have purchased the store even had they known the true differential.

The assertion that the evidence conclusively showed the Andersens intended to defraud appellants when they misrepresented the amount of the premium charged The Poultry Center is disposed of by the finding of the trial court that the misrepresentation was not material. However, the trial court also made the finding, supported by sufficient evidence, that respondents did not have the requisite intent to defraud, for Mr. Andersen testified that he prepared the paper containing the estimated 4-cent premium at the request of his broker, who had told him to prepare something right away because appellants were in a hurry to purchase the business. He also testified that these figures were merely an approximation and that he had advised the purchasers of that fact prior to the closing of the deal; a fact also testified to by the broker. Appellants contend that these facts are of no moment in view of the rule set forth in *Eck* v. *McMichael* (1959), 176 Cal.App. 2d 368 [1 Cal.Rptr. 369], in which it was held that where a vendor makes obvious misrepresentations as to profits, it is

reversible error for the trial court to find there was no intent to defraud on the part of vendor. There is a distinct difference between that case and the instant case, for in the McMichael matter, the misrepresentation was as to the entire net profit per week rather than merely as to one item which went into the profit, and the representations therein were so grossly disproportionate to the actual facts, whereas here it was a representation of but 6 mills out of a figure of 4 cents.

Although counsel for appellants contends on argument that his position throughout this litigation has been that the net profits of the business as an entirety were misrepresented and that he did not limit himself to a misrepresentation as to the premium charge and its alleged effect upon said profits, we cannot accept this statement. It is true the complaint alleges a representation by the respondents with respect to the profits of $4,888.52, but it then goes on to break down the said representation and alleges that the premium charge on poultry of 48,320 pounds at 4 cents, or a total of $1,932.80, was false. Upon the trial based on these allegations, we find the hearing completely directed so far as appellants are concerned to establishing that the claimed differential charge of 4 cents per pound was untrue and knowingly made with intent to deceive, whereas the respondents' efforts were expended toward proving that the charge existed and the representation was not fraudulently made. Under such circumstances, a change in attack at this time comes too late.

In addition, respondents produced testimony that the Chalases did not operate the business in the same manner as the Andersens, and two examples were given: (1) that the rotisserie operated under Andersen ownership had broken down, and the Chalases had not had it repaired for some period of time, so that customers were not able to purchase broiled chicken; and (2) if a customer asked for a chicken part that was not in stock, although it could have been produced by cutting up another type that was in stock, the Chalases would not do so.

From the record the trial court was justified in concluding, as it undoubtedly did, that the Chalases had no sooner made the purchase of the business than they wished to get out of the bargain without regard to profits or earnings of the business, that this type of business was not for them in view of their past engagements, and that without any heart for the business they failed to conduct it in the same aggressive manner as the Andersens had, with the result that the profits

did not stand up, a failure which could not be charged to respondents and so warrant rescission of the sale on the ground of a fraudulent misrepresentation.

The court included among its findings one to the effect that the notice of rescission was not timely made, to which appellants object on the ground that the evidence conclusively established the opposite. We need not consider this contention, inasmuch as we have determined the trial court was correct in holding that the appellants did not have any right to rescind, hence any question as to the time or manner of the giving of notice of rescission cannot affect the judgment.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.