[Civ. No. 1924. Fifth Dist. June 19, 1974.]

ROBERT HARRY WOOD et al., Plaintiffs and Respondents, v. WILLIAM S. KALBAUGH III et al., Defendants and Appellants.

## COUNSEL

Close & Meier and Bruce N. Meier for Defendants and Appellants.

Roger C. Donahue for Plaintiffs and Respondents.

## OPINION

**GARGANO, J.**—This is an appeal from a judgment of the Superior Court of Kern County upholding respondents' unilateral rescission of a contract to purchase appellants' house and granting restitution. The sole question is whether the evidence supports the judgment.

In July 1970, appellants, who had lived in their home on Glenwood Drive in Bakersfield, California for more than five years, listed the house for sale with the Bakersfield Investment & Realty Company. Joyce Barnes, a real estate agent for the realty company, then showed the house to respondents; she told them that with the exception of the dishwasher "everything was in perfect shape." Thereupon, respondents executed a written agreement to buy the home for the purchase price of $13,400; they agreed to make a down payment of $1,700, to assume a first mortgage in the amount of $8,700, and to execute a promissory note in favor of appellants for the balance of the purchase price, to be secured by a second deed of trust against the property. A 30-day escrow was opened with the Title Insurance and Trust Company in Bakersfield, and respondents deposited the $1,700 down payment into the escrow. They also executed all necessary documents to complete the transaction.

On August 14, 1970, an employee of the Pacific Gas & Electric Company told respondents that he could not turn on the utilities to the Glenwood Drive house because there was a dangerous leak in the gas line. Respondents called the title company and informed the escrow officer that they were not going to go through with the escrow. The following day respondents informed Joyce Barnes that they were not going to buy appellants' house because the gas line had a dangerous leak.

On August 15, 1970, appellant William Kalbaugh and his father, a boilermaker with plumbing experience, inspected the gas line and discovered that the leak was caused by a break in a rusted pipe running under the driveway; they pulled out the pipe and replaced it. Kalbaugh testified that after repairing the break, he pumped 15 pounds of air into the line and that when he returned the next day the gauge still read 15 pounds. He said he obtained a building permit from the City of Bakersfield on the following Monday and requested an inspection; the line was inspected by a city inspector and passed city safety requirements.

On August 17, 1970, the escrow closed, and thereafter respondents failed to make any payments on the first mortgage or the second deed of trust. On October 6, 1970, appellants commenced foreclosure proceedings against respondents. Approximately seven weeks later, respondents served appellants with a notice of rescission and tendered a grant deed to the Glenwood Drive property. Appellants refused to accept the rescission or the tender of the deed; the foreclosure proceedings were completed on February 11, 1971.

In 1972, respondents brought this action in the court below for restitution. They took the position that they had rescinded the agreement to purchase appellants' house unilaterally and that they were entitled to restitution under section 1692 of the Civil Code. Section 1692 states that "[w]hen a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by . . . bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission . . . ."

After court trial, the court entered judgment awarding respondents the sum of $1,804 as restitution for the down payment respondents deposited in the escrow; the court determined that the unilateral rescission was justified and declared that title to the house was vested in appellants.

 It is clear that the evidence does not support the court's judgment on the theory of actual fraud. Appellants were not aware of the leak in the gas line when their agent told respondents that appellants' house was "in perfect shape." Respondents' complaint for restitution was not grounded on fraud alone. It also was predicated on innocent misrepresentation and mutual mistake, and in this state a contract may be rescinded by a contracting party unilaterally if his consent to be bound by the agreement was induced either by a material misrepresentation, though innocently made, or a mistake. (Civ. Code, § 1689; *Crocker-Anglo Nat. Bank* v. *Kuchman,* 224 Cal.App.2d 490, 495-497 [36 Cal.Rptr. 806]; *Evans* v.

*Spatt,* 131 Cal.App.2d 47, 48-49 [279 P.2d 1026]; Rest., Contracts, § 476.) Since the trial court's findings support the judgment on these theories, the pivotal question is whether the findings are supported by the evidence; on appeal, a judgment will be sustained on any theory supported by the trial court's findings and the evidence. (*Davey* v. *Southern Pacific Co.,* 116 Cal. 325, 329 [48 P. 117]; *Snider* v. *Snider,* 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709].)

■ To justify the unilateral rescission of a contract on the ground of misrepresentation, it must be shown that the misrepresentation was of a *material* fact; ordinarily, a misrepresentation is of a material fact " '. . . if it would be likely to affect the conduct of a reasonable man with reference to the transaction in question.' " (*Costello* v. *Roer,* 77 Cal.App.2d 174, 178 [175 P.2d 65].) But, a distinction must be drawn between a fraudulent representation and an innocent one. For example, if A, with knowledge of B's idiosyncrasy or personal belief, wilfully conceals a fact related to the idiosyncrasy or belief, to induce B to enter into a contract, A should not reap the fruit of his deception merely because it is unlikely that the misrepresentation would have affected a reasonable man. However, where the misrepresentation is unintentional, there are innocent parties on both sides of the contract. As the Restatement of Contracts puts it, the ". . . materiality of the mistake induced by innocent misrepresentation is essential while materiality is not essential if a mistake induced by fraud produces the intended consequences." (§ 476, com. b.) As to innocent misrepresentations, the right to rescind is based on equitable principles, and equity dictates that in determining whether the misrepresentation was of a material fact the objective test is applicable. In fact, it is basic that the effect of an innocent misrepresentation is destroyed ". . . if the facts subsequently accord with the representation." (Rest., Contracts, § 476, com. b.)

■ We consider the misrepresentation which was made in this case with the equitable formula in mind.

Joyce Barnes' statement that appellants' house was "in perfect shape" cannot be taken in the literal sense. At the very best, it was a representation that the house was in good condition, and according to early concepts would have been treated as commendatory language known as "sales talk" or "puffing." Under the modern trend, such statements, particularly when made by builders and real estate agents, are considered representations of a material fact because they tend to induce reasonable men to purchase the property which is up for sale. (See *Harazim* v. *Lynam,* 267 Cal.App.2d 127, 131 [72 Cal.Rptr. 670]; *Haserot* v. *Keller,* 67 Cal.App. 659, 670-671 [228 P. 383]; 37 Am.Jur.2d, Fraud and Deceit, § 55, pp.

84-85.) Consequently, while Ms. Barnes' statement was in the nature of an opinion and cannot be viewed as a representation that appellants' house was perfect in every way, the statement obviously was intended to convey the impression that the house was in good condition and was a representation of a material fact. The question narrows to whether the leak in the gas line was a substantial defect under the objective standard so that it can be said that when the escrow closed, and later when respondents, for the first time, proceeded to effect rescission pursuant to section 1691 of the Civil Code, the house was not in good condition.

We have concluded that the answer to this question is in the negative. Respondents had the burden of proof in this case, and they presented no evidence to show that the gas line in question was of inferior quality or that the leak was caused by defective workmanship; the only evidence presented on the issue shows that the leak was caused by a break in a rusted pipeline, that the rusted pipeline was replaced immediately by William Kalbaugh and his father, and that the repair work was tested by the Kalbaughs carefully and later passed city safety requirements. Nevertheless, the trial judge reasoned that respondents were entitled to rescind their contract because when the contract was entered into the gas leak created a dangerous condition, making the house uninhabitable at that time; the judge did not believe that the fact that the gas leak was readily reparable and was repaired by respondents immediately was germane to the issue involved. If this reasoning is carried to its ultimate conclusion, it would mean that a purchaser who has contracted to buy real property could rescind the contract prior to the close of escrow if he discovered a dangerous condition on the property, no matter how inconsequential or easily remediable the cause which gave rise to the condition may have been.

Breaks in underground pipelines are not rare or unusual occurrences and can be caused by rust or erosion. To hold that a house or other building, which is at least five years old, was not in good condition at the time for the performance of the contract of sale or, as in this case, when the escrow closed, because when the contract was made there was a readily reparable break in an underground gas line or sewer outlet or electrical conduit which was repaired immediately by the seller would jeopardize the integrity of contracts for the sale of property. And to declare that the purchaser could justify his unilateral rescission of the contract without even showing that the gas line or the sewer outlet or the electrical conduit, although repaired, was still in a dangerous or defective condition, would place an undue restriction on good faith sellers of property who often change their position as the result of the sale.

Furthermore, the court granted respondents restitution of their down payment without any evidence to support the implied finding that they actually relied on the representation that the house was in "perfect shape" when they agreed to buy it; for example, Mrs. Wood had been a licensed real estate saleswoman in Colorado, and she testified only that she would not have entered into the agreement had she known that there was a leak in the gas line, regardless as to whether the leak was reparable; neither Mrs. Wood nor her husband testified that they would not have purchased the house but for the representation which was made by the real estate agent.

■ It is elementary that to justify the rescission of a contract on the ground that there was a misrepresentation of a material fact, it must be shown that the party seeking to rescind relied on the representation and that he would not have entered into the contract without it. (Civ. Code, §§ 1567, 1568, 1689; *Chalas* v. *Andersen,* 192 Cal.App.2d 452, 456 [13 Cal.Rptr. 257]; *Adkins* v. *Wyckoff,* 152 Cal.App.2d 684, 689 [313 P.2d 592].)

■ For essentially the same reasons, we reject respondents' contention that the judgment is supportable on the theory of mutual mistake. The very most that the record shows is that both parties believed that appellants' house was in good condition when the contract was signed; the readily reparable break in the line was repaired and was not a material defect when the escrow closed; it did not change the overall condition of the house from good to bad. The gas leak, therefore, did not destroy an essential element of the contract but only affected the state of mind of Mrs. Wood, who by her own testimony, was unusually sensitive to the gas leak even though it was reparable. Because Mrs. Wood's sensitivity was not communicated to appellants or their agent, the mistake pertained to a subjective or collateral matter. ■ It is settled that to warrant a unilateral rescission of a contract because of mutual mistake, the mistake must relate to basic or material fact, not a collateral matter. (Civ. Code, §§ 1576, 1577, 1689; *Williams* v. *Puccinelli,* 236 Cal.App.2d 512, 519 [46 Cal.Rptr. 285]; *Bellwood Discount Corp.* v. *Empire Steel Building Co.,* 175 Cal.App.2d 432, 435 [346 P.2d 467]; *Vickerson* v. *Frey,* 100 Cal. App.2d 621, 626-628 [224 P.2d 126].)

The trial judge observed ". . . that it would be unconscionable to allow [appellants] to retain the property and also the money deposited by the [respondents]." Because respondents elected to rest on the notice of rescission they served after the escrow was closed, and because the trust deed they executed was foreclosed, their right to restitution depended upon whether they had legal cause to rescind, not whether it would be

unconscionable to allow appellants to retain the property and also the down payment respondents made.

The judgment is reversed.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied July 19, 1974, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied August 14, 1974.