Filed 12/16/13  Briercrest Development v. City of La Mesa CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRIERCREST DEVELOPMENT, L.P., | D061217 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00066439-CU-BC-EC) |
| CITY OF LA MESA, | |
| Defendant and Respondent. | |

APPEALS from a judgment and order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Karcher Harmes PS, Kathryn E. Karcher; Hecht, Solberg, Robinson, Goldberg & Bagley and Joshua A. Sonne for Plaintiff and Appellant.

Glenn Sabine, City Attorney, and Gregory L. Lusitana, Assistant City Attorney, for Defendant and Respondent.

Briercrest Development, L.P. (Briercrest) entered into a series of agreements with the City of La Mesa (the City) to develop and operate a residential care facility for

seniors on land owned by the City. After Briercrest failed to meet certain contractual deadlines in the most recent agreement, the City terminated its contractual relationship with Briercrest, and Briercrest filed a lawsuit against the City. Briercrest appeals from a judgment against it following a bench trial, focusing its appellate challenge on its cause of action for rescission. Briercrest also appeals from the award of attorney fees in favor of the City, arguing that if the judgment is reversed, the award of attorney fees to the City as the prevailing party must fail.

We conclude that the trial court properly found in favor of the City on the rescission cause of action, and accordingly we affirm the judgment. Because the City remains a prevailing party, we also reject Briercrest's challenge to the award of attorney fees in favor of the City.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Contractual Relationship Between the City and Briercrest*

In 2004, the City entered into a ground lease with Briercrest's predecessor in interest, Health Care Group, to construct and operate a residential care facility for senior citizens on real property owned by the City (the Project).

In November 2006, after Health Care Group assigned its interest in the ground lease to Briercrest, the City and Briercrest entered into a first amendment to the ground lease that changed the scope of the Project from rental units for seniors to 76 residential leasehold condominium units for seniors. The change to a condominium development

2

was prompted by an increase in the expected development costs for the Project, which made rental units economically unfeasible.

In January 2008, after Briercrest failed to presell the necessary number of condominiums, the parties entered into a second amendment to the ground lease which returned the Project to the original concept of rental units.

After entering into the second amendment to the ground lease, Briercrest could not obtain financing for the Project due to a crisis in the financial markets. Briercrest believed that it could obtain financing insured by the United States Department of Housing and Urban Development (HUD) if it included a skilled nursing facility in the Project. Accordingly, Briercrest proposed to again amend its agreement with the City so that the Project would comprise two separate buildings: a skilled nursing facility and an assisted living residential care facility.

Although it agreed to the change in the scope of the Project to both types of facilities, the City was getting impatient with the delays and thus declined to structure the new agreement as a further amendment to the existing ground lease. Instead, on May 26, 2009, the City and Briercrest entered into an "Agreement to Ground Lease Property" (the 2009 Agreement).

The 2009 Agreement terminated the existing ground lease and set forth several "conditions for the benefit of [the] City" in paragraph 3.1 that Briercrest had to satisfy within 180 days of execution of the document. The 180-day deadline could be extended by Briercrest in three 30-day increments upon Briercrest's payment of $23,958 for each 30-day extension. Upon satisfaction of the conditions, a new ground lease would be

3

recorded to restore Briercrest's leasehold interest in the Property ("Closing"), and Briercrest could go forward with constructing the residential care facility and skilled nursing facility. The City had the contractual right to terminate the 2009 Agreement if Closing failed to occur by the contractual deadline.

For the purposes of this litigation, the three most relevant conditions to Closing set forth in the 2009 Agreement were that (1) Briercrest was to obtain long-term financing insured by HUD, or from another source acceptable to the parties; (2) Briercrest was to be ready to commence construction within 15 days of Closing; and (3) Briercrest was to obtain building permits from the City, and all other entitlements and permits from the relevant governmental entities for construction and operation of the Project.

The condition requiring Briercrest to obtain the required governmental permits and other land use entitlements was set forth in paragraph 3.1(a) of the 2009 Agreement. Pursuant to that paragraph, the governmental permits that Briercrest had to obtain within the contractual deadline included (1) a permit from the Office of Statewide Health Planning and Development (OSHPD) for the construction of the skilled nursing facility portion of the Project; and (2) a building permit from the City for the remainder of the Project, i.e., for the assisted living facility.[1]

The 2009 Agreement also required Briercrest to make an initial $287,500 payment to the City and a monthly payment of $4,800 until Closing. Under the 2009 Agreement,

---

[1] To construct the Project contemplated by the 2009 Agreement, Briercrest would also need to obtain (1) a conditional use permit from the City (which it obtained prior to the contractual deadline); (2) a modification of the grading permit from the City; and (3) a permit from the water district.

both types of payments were nonrefundable unless Closing failed to occur because of a material breach by the City.

The initial 180-day period for Briercrest to satisfy the conditions in paragraph 3.1 commenced on June 1, 2009, when Briercrest made the $287,500 payment. After 180 days had elapsed, Briercrest made the first payment to extend the deadline for it to perform the conditions in paragraph 3.1 by 30 days, to February 1, 2010.

Briercrest intended to satisfy the condition that it obtain financing before the contractual deadline by obtaining financing insured by HUD. Because Briercrest did not have experience in obtaining HUD financing, it retained a specialist, Amerisphere Mortgage Finance (Amerisphere). On May 26, 2009, the same day as the 2009 Agreement, Amerisphere submitted Briercrest's preliminary application to HUD for financing. On January 4, 2010, after an initial rejection of Briercrest's preliminary application to HUD and a resubmittal of the application, Briercrest learned that HUD had denied its request for financing. The rejection was unexpected and occurred because of an apparent shift by HUD in 2009 away from insuring loans for new construction.

When Briercrest learned that its application had been rejected by HUD, the first 30-day extension of the contractual deadline was in effect, and Briercrest had the option of making two more extension payments which would have extended until April 1, 2010, the deadline to satisfy the conditions in paragraph 3.1.

Although it had been trying to obtain financing for the Project through HUD, Briercrest did not take steps to obtain a building permit from the City for the assisted living portion of the Project or a permit from OSHPD for the skilled nursing facility.

5

Briercrest did not proceed with these requirements because it wanted to first learn whether the financing would be provided through HUD. At trial, the Briercrest executive in charge of the Project, Kevin Moriarty, agreed with the statement that Briercrest was "really putting all [its] eggs in the basket of getting HUD financing before trying to go forward with the other conditions outlined in the [2009] Agreement."

Further, according to the testimony at trial, at the time of negotiating the 2009 Agreement, Moriarty assumed, based on his experience with OSHPD several years earlier, that obtaining a permit for construction of the skilled nursing facility from OSHPD would take approximately four months. However, in the fall of 2009, Moriarty learned that his assumption about the timeframe for OSHPD approval was wrong. Because of budget problems, OSHPD was taking significantly longer to review applications. An expert witness testified at trial that if Briercrest had submitted an application to OSHPD on May 26, 2009, the earliest it could have obtained approval from OSHPD for the skilled nursing facility was July 10, 2010. The average time for OSHPD to approve of comparably sized projects in fiscal year 2009-2010 was 557 days.

B.     *Briercrest's Proposal to Modify the 2009 Agreement*

After the rejection by HUD, Briercrest immediately began looking for other financing options. Briercrest determined that financing would be easier to obtain for the skilled nursing facility alone, rather than the entire Project, and that it could fund the remainder of the Project by using the cash flow from the completed skilled nursing facility.

Accordingly, on January 26, 2010, Briercrest sent the City a proposal to modify the 2009 Agreement. Briercrest explained that because it was not able to obtain financing insured by HUD, it proposed to obtain financing from other sources and complete the Project in two phases, the first of which would be the skilled nursing facility. Briercrest proposed that the contractual deadlines in the 2009 Agreement be extended through the end of 2010, with a possible additional three-month extension to April 1, 2011, so that it could obtain financing from another source and have sufficient time to obtain permits from OSHPD. Briercrest attached a financing proposal from Comerica Bank for phase 1 of the Project.

The City Council met on February 9, 2010, in closed session and "took no reportable action" on the proposal by Briercrest to modify the 2009 Agreement. On February 11, 2010, the City gave notice that it would give Briercrest until February 22, 2010, to make a monthly extension payment for February so that the 2009 Agreement did not terminate.

Briercrest informed the City on February 18, 2010, that it would make the monthly extension payment for February only if the City accepted the proposal to modify the 2009 Agreement or agreed, in good faith, to negotiate the terms of that modification. The City responded to Briercrest on February 18, 2010, that it had no interest in pursuing the proposal to modify the 2009 Agreement.

Briercrest did not make the monthly extension payment for February, and the City informed Briercrest on February 23, 2010, that the 2009 Agreement was terminated.

7

C.      *Briercrest's Lawsuit Against the City*

Briercrest filed the instant lawsuit against the City on March 18, 2010.  The complaint contained six causes of action:  (1) breach of contract based on the City's rejection of the proposed financing and subsequent termination of the 2009 Agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) reformation of the 2009 Agreement to extend the deadline for Briercrest to obtain financing from HUD and approval from OSHPD; (4) unjust enrichment based on Briercrest's improvements to the real property; (5) rescission of the 2009 Agreement because the parties made a mutual mistake in setting an impossible deadline for obtaining financing from HUD and approval from OSHPD; and (6) declaratory relief regarding the parties' obligations under the 2009 Agreement.[2]

The case proceeded to a bench trial.  Briercrest's trial brief set forth the two "over-arching issues" that it perceived in the case:  "(1) the [2009] Agreement was impossible to perform on the day the parties entered into it, and was entered into due to a mutual mistake of fact, both of which require the rescission of the [2009] Agreement; and (2) alternatively, if the [2009] Agreement should not be rescinded, the City breached the [2009] Agreement by failing to examine (and approve) the [p]roposed [f]inancing" from Comerica Bank.  Although the complaint pled mutual mistake and impossibility based on Briercrest's inability to obtain *both* HUD financing *and* timely approval from OSHPD, at

---

2      At trial, Briercrest expressly abandoned its reformation cause of action, but the trial court nevertheless addressed and rejected the reformation cause of action in its statement of decision as there was no formal dismissal.

8

trial Briercrest expressly limited its rescission cause of action to mistake and impossibility concerning the condition of OSHPD approval.

If it prevailed on its rescission cause of action, Briercrest sought the return of the money it paid to the City under the 2009 Agreement, consisting of the $287,000 payment, the eight monthly payments of $4,800 each, and the extension payment of $23,958, for a total of approximately $349,000.

As set forth in its statement of intended decision, the trial court found against Briercrest on each cause of action.

On the rescission cause of action, the trial court addressed only the theory of mutual mistake, not impossibility. The trial court concluded that for the reasons set forth in its analysis of the reformation cause of action, "the Court is not persuaded that [the 2009 Agreement] should be invalidated because of a mutual mistake on the part of both [Briercrest] and [the City]." According to the trial court, Briercrest failed to satisfy one of the elements for mutual mistake because it did not establish that "[the City] would not have agreed to enter into [the 2009 Agreement] if it had known about the alleged mistakes involving . . . OSHPD approval delay." Because the trial court rejected the theory of mutual mistake on this ground, it expressly declined to decide whether the parties' belief about the likely timeframe for OSHPD approval satisfied the legal definition of mutual mistake "or, instead, constitute[d] a business risk inherent in every business endeavor."

On the breach of contract cause of action, the trial court concluded that "[Briercrest] failed to satisfy one or more conditions within its control, the consequence

9

of which [the City] was entitled to terminate [the 2009 Agreement]." Among other things, in the course of explaining its decision on the breach of contract cause of action, the trial court found that (1) each of the conditions in paragraph 3.1 of the 2009 Agreement was material, and (2) "even if [Briercrest] had submitted its Plans on May 26, 2009, OSHPD would not have approved the Plans until July 2010, a date beyond the Schedule for Closing."

Briercrest filed an opposition to the trial court's statement of intended decision, which among other things, requested a separate and specific finding on Briercrest's claim of rescission based on impossibility, in addition to the finding on mutual mistake.

The trial court issued a final statement of decision that was substantively identical to the statement of intended decision, and it then entered judgment in favor of the City. In a postjudgment order, the trial court determined that, as the prevailing party, the City was entitled to recover its reasonable attorney fees pursuant to the attorney fee provision in the 2009 Agreement in the amount of $148,363.

Briercrest filed notices of appeal from the judgment and from the order awarding attorney fees to the City.

II

DISCUSSION

A.    *Briercrest's Challenge to the Decision Against It on the Rescission Cause of Action*

The only cause of action at issue in Briercrest's appeal is its rescission cause of action.  Briercrest argues that it has a meritorious claim for rescission under either a theory of impossibility or mutual mistake.  We address each theory in turn.

1.    *The Impossibility of Performing a Condition Precedent Is Not a Recognized Basis for Rescission of a Contract*

The first issue before us is whether the trial court erred in failing to consider the theory of impossibility when ruling on the rescission cause of action.

As we have explained, Briercrest sought rescission of the 2009 Agreement on the ground that it was factually impossible, at the time the agreement was made, for Briercrest to satisfy the condition in paragraph 3.1(a) that it obtain a permit from OSHPD for the skilled nursing facility within the contractual deadline.

The possible grounds for rescission of a contract are set forth in Civil Code section 1689.  Briercrest contends that section 1689, subdivision (b)(4) applies here.  The provision states that a party may obtain rescission "[i]f the *consideration* for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause."  (*Ibid*., italics added.)  According to Briercrest, because one of the conditions in paragraph 3.1(a) was impossible to perform, there was a failure of consideration which gave rise to its right to rescind under section 1689, subdivision (b)(4).  As we will explain, Briercrest has failed to establish the applicability of 1689,

11

subdivision (b)(4) because the conditions in paragraph 3.1 of the 2009 Agreement are not "*consideration* for the obligation of the rescinding party."  (*Ibid*., italics added.)

Consideration is defined by statute as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor . . . ."  (Civ. Code, § 1605.)  The consideration recited in the 2009 Agreement is the parties' promise that, under certain conditions, they will enter into a new ground lease, and that Briercrest will make certain payments to the City in the interim.  The conditions set forth in paragraph 3.1 are not consideration because Briercrest does not promise to perform those conditions, and thus they do not function as a "benefit conferred, or agreed to be conferred, upon the [City] . . . as an inducement to the [City]."  (Civ. Code, § 1605.)

Instead, the conditions set forth in paragraph 3.1 of the 2009 Agreement are conditions precedent to the City's obligation under the 2009 Agreement to enter into a new ground lease with Briercrest.  A condition precedent "is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises."  (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 314; see also Civ. Code, § 1436 [defining condition precedent].)  The conditions set forth in paragraph 3.1 of the 2009 Agreement are conditions precedent to the City's obligation under the 2009 Agreement because fulfilling those conditions is an act that Briercrest *may* perform by a specific deadline and which, *if performed*, will bind the City to enter into a ground lease.  Put another way, Briercrest's performance of the conditions

12

set forth in paragraph 3.1 are not consideration because the City would not have a basis to sue Briercrest for breach of contract if Briercrest failed to perform those conditions. (See *City of Stockton v. Stockton Plaza Corp.* (1968) 261 Cal.App.2d 639, 644 [distinguishing between a condition precedent and a covenant constituting a party's consideration under an agreement].)

Because rescission under Civil Code section 1689, subdivision (b)(4) requires *a failure of consideration*, but the conditions set forth in paragraph 3.1 are conditions precedent, not consideration, the prerequisites for obtaining rescission under section 1689, subdivision (b)(4) are not present here.[3]

Not only does Briercrest fail to come to terms with the statutory requirement that a failure of *consideration* exist for rescission to be available under Civil Code section 1689, subdivision (b)(4), it also cites case law which is inapposite because it concerns rescission based on the impossibility of supplying the *consideration* called for in the agreement, not the impossibility of fulfilling a *condition precedent*. (See *Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 318, fn. 16 [stating that "[r]escission *upon failure of consideration* includes cases . . . where the failure of consideration results from such factors as impossibility" (italics added)]; *Habitat Trust for Wildlife, Inc. v. City*

---

3      In addition to establishing *a failure of consideration* to obtain rescission under Civil Code section 1689, subdivision (b)(4), the statute requires Briercrest to establish a failure of consideration "*for the obligation of the rescinding party.*" (Civ. Code, § 1689, subd. (b)(4), italics added.) Briercrest could not logically establish that the conditions set forth in paragraph 3.1 constitute consideration for its *own* obligations under the 2009 Agreement because the acts described in paragraph 3.1 are to be performed *by Briercrest* for the benefit of the City.

13

*of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1137 [cross-complaint for rescission based on "the failure of material consideration" to the cross-complainant under Civ. Code, § 1689, subd. (b)(4)]; *Vickerson v. Frey* (1950) 100 Cal.App.2d 621, 630 [discussing claim for rescission based on alleged impossibility that caused a failure of consideration].) Other case law relied on by Briercrest is even less applicable because it deals with neither rescission nor conditions precedent, but instead with whether the impossibility or impracticality of supplying the *consideration* called for in a contract may be used as a *defense* to a breach of contract cause of action. (*In re Marriage of Benjamins* (1994) 26 Cal.App.4th 423, 432-433; *City of Vernon v. City of Los Angeles* (1955) 45 Cal.2d 710, 717; *Mineral Park Land Co. v. Howard* (1916) 172 Cal. 289.)

In arguing for rescission based on impossibility, Briercrest also relies on Civil Code section 1441, which states that "[a] condition in a contract, the fulfillment of which is impossible . . . is void." According to Briercrest, the condition that it obtain approval from OSHPD was impossible to perform within the contractual deadline and was therefore void under Civil Code section 1441, entitling it to rescind the 2009 Agreement.[4] However, Briercrest cites no authority — and we are aware of none — for

---

[4] Although sparse case law exists interpreting Civil Code section 1441, its application appears — consistent with general principles of contract law — to be in providing a party with an *excuse* for nonperformance of a contractual condition that is impossible to perform rather than in permitting rescission of a contract. The Restatement Second of Contracts, section 271 provides that "[i]mpracticability excuses the non-occurrence of a condition if the occurrence of the condition is not a material part of the agreed exchange and forfeiture would otherwise result." (*Id*. at p. 354.) Williston on Contracts describes the rule that "the party whose duty is subject to a condition precedent must perform, despite the nonoccurrence of the condition as a result of impossibility or

14

its claim that a party may rescind a contract if the contract binds that party to perform a void condition precedent. The statute authorizing rescission mentions void provisions as a basis for rescission only in Civil Code section 1689, subdivision (b)(3), which states that a party may rescind a contract "[i]f the consideration for the obligation of the rescinding party becomes entirely *void* from any cause." (Italics added.) However, this provision does not apply for the same reason that Civil Code section 1689, subdivision (b)(4) does not apply: the conditions precedent in paragraph 2.31 are not "*consideration for the obligation of the rescinding party*" as expressly required by Civil Code section 1689, subdivision (b)(3).[5] (Civ. Code, § 1689, subd. (b)(3), italics added.)

In short, no legal authority allows a party to rescind a contract when it is impossible for that party to perform a condition precedent to which it agreed.

---

impracticability" except when "the occurrence of the condition is a material part of the agreed exchange." (14 Williston on Contracts, § 43:14, pp. 624-625; see also *Edelman Arts, Inc. v. Art Intern. (UK) Ltd.* (S.D.N.Y. 2012) 841 F.Supp.2d 810, 828 ["Impossibility excuses the non-occurrence of a condition precedent if the occurrence of the condition is not a material part of the agreement and forfeiture would otherwise result."].)

[5] Briercrest cites *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 125, and *Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1084, to support its argument that "[i]f a void condition is not severable from the contract, the entire contract fails." But, neither of these cases deal with *rescission* based on a void contractual provision, and they also do not deal with the impossibility of fulfilling a *condition precedent*. Instead, both cases concern the denial of petitions to compel arbitration arising out of unconscionable one-sided arbitration agreements. Both opinions conclude that arbitration may not be compelled and the entire agreement is void, as the unconscionable provisions are not severable. (*Armendariz*, at p. 125; *Davis*, at p. 1084.)

Accordingly, the trial court properly declined to consider impossibility as a ground for Briercrest's rescission cause of action.

2. *Mutual Mistake Fails as a Matter of Law as a Basis for Rescission of the 2009 Agreement*

We next consider whether, as Briercrest contends, the trial court erred in concluding that Briercrest's cause of action for rescission based on mutual mistake lacked merit.

Unlike the impossibility of performing a condition precedent, mutual mistake of fact is a well-recognized basis for rescission set forth in Civil Code section 1689. Specifically, Civil Code section 1689, subdivision (b)(1) provides that a party may rescind a contract "[i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake . . . ." (*Ibid*.) "A 'mistake' within the meaning of subsection (b)(1) of section 1689 of the Civil Code can be either one of fact . . . or of law . . . . 'Generally, a mistake of fact occurs when a person understands the facts to be other than they are . . . .' . . . When both parties understand the facts other than they are, the mistake necessarily is mutual and thus becomes a basis for rescission." (*Crocker-Anglo Nat. Bank v. Kuchman* (1964) 224 Cal.App.2d 490, 496, citations omitted.) "It is settled that to warrant a unilateral rescission of a contract because of mutual mistake, the mistake must relate to basic or material fact, not a collateral matter." (*Wood v. Kalbaugh* (1974) 39 Cal.App.3d 926, 932.)

As an initial matter we address an error in the trial court's legal analysis of mutual mistake. The trial court concluded that Briercrest had not prevailed in establishing the

16

elements necessary to obtain rescission based on mutual mistake because it did not prove that *the City* would have declined to enter into the 2009 Agreement had it known of the true facts about the timeframe for OSHPD approval. Both parties appear to agree that the trial court applied an incorrect legal standard. The proper inquiry is whether *Briercrest*, as the party seeking rescission, would have entered into the 2009 Agreement had it known about the true facts.

As Witkin explains, a contract is "subject to rescission where there is a harmful mistake as to some basic or material fact *that induced the plaintiff* to enter into it." (1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 260, pp. 288-289.) This longstanding rule was applied by our Supreme Court in *Hannah v. Steinman* (1911) 159 Cal. 142, 147, in which the plaintiff sought to rescind a lease on the ground that the parties were mistaken about the type of building that could be legally constructed on the lot. Our Supreme Court explained that the relevant inquiry was whether *the plaintiff* — as the party seeking to rescind the contract — would have entered into the contract absent the mutual mistake. (*Ibid*.) Because a contract is "subject to rescission by the party harmed," it is the *plaintiff* who must show that it is "harmed by the mistake." (*Guthrie v. Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 884 (*Guthrie*).) Based on this authority, the trial court erred in requiring Briercrest to establish that *the City* would have declined to enter into the 2009 Agreement had it known of the timeframe for OSHPD to issue a

17

permit.[6]  The trial court should have, but did not, consider whether *Briercrest* would have entered into the 2009 Agreement absent the mistake.

As we will explain, however, the trial court's error does not require that the judgment be reversed because its rejection of mutual mistake as a basis for rescission can be affirmed on another ground as a matter of law.  "Where . . . the extrinsic evidence is not in conflict, the determination of whether a mutual mistake occurred is a question of law." (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527.)  Although the trial court did not reach the issue of whether the parties operated under a "mutual mistake" or simply undertook "a business risk" that OSHPD would not timely issue a permit, the undisputed facts in the record lead us to conclude, as a matter of law, that mutual mistake is not present in this case as that term is defined in the controlling case law.

We begin with the statutory definition of mistake of fact.  Civil Code section 1577 states, "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:  [¶]  1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,  [¶]  2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past

---

6     The trial court's error was apparently caused by its express reliance on CACI No. 331, which describes the elements for the *affirmative defense* of mutual mistake.  In an affirmative defense the *defendant* seeks rescission of the contract, and thus the defendant must show that it would not have agreed to enter into the contract had it known about the mistake.  However, when *the plaintiff* is the party asserting a cause of action for rescission, the inquiry — as we have described above — is whether *the plaintiff* would have entered into the contract absent the mistake.

18

existence of such a thing, which has not existed."[7]  Further, "[t]he kind of mistake which renders a contract voidable does not include a mistake as to a matter which one of the contracting parties had in mind as a possibility and as to the existence of which he took the risk."  (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 153 (*Glendale Fed.*).)  "Where parties are aware at the time the contract is entered into that a doubt exists in regard to a certain matter and contract on that assumption, the risk of the existence of the doubtful matter is assumed as an element of the bargain."  (*Guthrie*, *supra*, 51 Cal.App.3d at pp. 885-886.)

Here, Moriarty expected based on his prior experience with OSHPD that it would take approximately four months to obtain a permit from OSHPD, and the City's representative, David Witt, accepted Moriarty's estimate.  However, despite their expectation of a smooth and timely approval from OSHPD, it is undisputed that the parties understood there was still a *risk* of delay.  Specifically, Moriarty discussed with Witt *before* entering to the 2009 Agreement that "OSHPD was a difficult agency to deal with, and we were hopeful they did not cause us significant delays on the project."  Witt testified that the parties discussed that the City would be flexible about the timeframe for obtaining OSHPD approval if a delay arose.  As Witt stated, "If we felt [Briercrest was] in substantial conformance and all that was left was one or two more corrections or sets

---

7      Although Civil Code section 1577 states that mistake of fact may not be caused by a neglect of a legal duty, it is well established that "[o]rdinary negligence does not bar a claim for mutual mistake because '"[t]here is an element of carelessness in nearly every case of mistake."' . . . 'Only gross negligence or "preposterous or irrational" conduct will [bar] mutual mistake . . . .'"  (*Thrifty Payless, Inc. v. Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1243, citations omitted.)

of corrections, [and Briercrest was] well into the OSHPD process, there was certainly the possibility we would be ready to execute the lease and issue the permits so the project could move forward."

In sum, according to the uncontradicted evidence, the parties understood that a delay by OSHPD was possible, but they were willing to accept that risk and would work together to address the delay if it occurred. Because the parties acknowledged and discussed the possibility of delay prior to entering into the 2009 Agreement, the delay was "a matter which one of the contracting parties had in mind as a possibility and as to the existence of which he took the risk." (*Glendale Fed.*, *supra*, 66 Cal.App.3d at p. 153.) Accordingly, the parties' assumptions about the timeframe for OSHPD approval does not reflect a mutual mistake justifying rescission of the contract, and the trial court properly rejected Briercrest's cause of action for rescission premised on alleged mutual mistake.[8]

B.      *The Challenge to the Attorney Fee Award Is Without Merit*

As the prevailing party at trial, the City was awarded its attorney fees pursuant to Civil Code section 1717. Briercrest's challenge to the attorney fee award is expressly dependent on its success in challenging the judgment on appeal.

---

[8]      Because we have concluded that Briercrest did not establish a factual basis for its rescission cause of action, we need not — and do not — address the City's arguments (which the trial court did not reach) that Briercrest is barred from obtaining rescission either because it delayed in asserting its rescission claim, affirmed the contract, or was in default at the time it sought rescission. Likewise, we also need not — and do not — address Briercrest's contention that the City waived those arguments by not raising them as affirmative defenses.

20

As we have rejected Briercrest's challenge to the judgment, we also reject its challenge to the award of attorney fees in favor of the City.

DISPOSITION

The judgment and the order awarding attorney fees in favor of the City are affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

21